LCOOKS, Judge.
Felicia Westmoreland filed suit against the City of Natchitoches seeking damages for injuries sustained when a police officer attempted to subdue Roderick Demery, who was attacking her and Paulette Dem-ery in a grocery store parking lot. The trial court found the officer free from fault and denied recovery. We affirm.
FACTS
On the morning of September 11, 1997, Paulette Demery picked up a friend, (Felicia Westmoreland) and requested she ride with her to drop her husband, Roderick Demery, off at his mother’s house. Paulette and Roderick were arguing with each other when they picked up Westmoreland at her residence in Natchitoches. Shortly thereafter, the argument escalated, and Roderick began prodding Paulette with a screwdriver while she drove. As they proceeded down 5th Street, Paulette attempted to signal a passing police officer with her lights, but Roderick threatened to stab her if she continued signaling. After turning onto Texas Avenue, Westmoreland asked Paulette to pull the car over so she could get out. Westmoreland intended to ask Sgt. Ricky Jones, a Natchitoches police officer who she saw parked at Turner’s Grocery, for a ride home. Roderick allowed Paulette to turn the ear into Turner’s Grocery, so Westmoreland could get out of the car and leave.
Once in the parking lot near Sgt. Jones’ patrol car, Paulette exited the car and began yelling to Sgt. Jones for assistance. Sgt. Jones testified Paulette was screaming frantically for him to get Roderick out of the car. He also testified that Paulette told him Roderick had a screwdriver and had been poking her with it in the car. Westmoreland followed Paulette out of the driver’s side of the car, and both women proceeded to the front of the car towards the store’s entrance. Roderick exited from the passenger-side and also proceeded to the front of the car. Roderick grabbed Westmoreland to block Paulette from running past him into the store. Roderick 13pinned the women against the ice machine outside against the wall and attempted to reach over Westmoreland to stab Paulette with the screwdriver.
Sgt. Jones testified he approached Roderick from behind and ordered him to back off and to drop the screwdriver. Sgt. Jones admitted, however, he did not see the screwdriver in Roderick’s hand. Roderick ignored Sgt. Jones’s repeated commands and continued to fight with West-moreland and Paulette. Sgt. Jones was not wearing his utility belt containing his weapon because he was not yet on duty that morning. He grabbed his PR-24 baton from his patrol car and attempted to radio the police department. He then ordered Roderick to stop and to drop the weapon. Roderick continued to struggle with Westmoreland and continued to ignore Sgt. Jones’ commands. Westmore-land placed her left hand on Roderick’s chest and used her right hand to pull his ponytail backwards in an attempt to get him away from her. Roderick had one hand around her neck. At some point, Paulette “broke away” and entered Turner’s Grocery. Sgt. Jones intervened and began to strike Roderick’s left shoulder with the baton. One of the first few blows also struck Westmoreland in her right forearm, breaking it. After several blows, Sgt. Jones subdued Roderick and placed him under arrest. The screwdriver was never found at the scene. After proceeding to the police station, Westmoreland sought medical attention for her broken arm.
ISSUE
Felicia Westmoreland assigns error to the trial court finding that the City of Natchitioches did not owe her a legal duty of care. The record reflects the trial court recognized the police officer’s legal duty to *717 Westmoreland but determined a breach of this duty did not occur under the circumstances. The sole issue on appeal is whether the trial court was clearly wrong in determining Sgt. Jones, considering the totality of the circumstances, acted reasonably when he intervened and arrested | ¿Roderick. Department of Transp. v. Schwegmann Westside Expressway, Inc. 95-1261 (La.3/1/96), 669 So.2d 1172.
DISCUSSION
To support a finding of negligence, plaintiff must prove: (1) defendant’s conduct was a substantial factor in bringing about her harm, (2) defendant owed her a duty, (3) defendant breached this duty, and (4)the risk and harm caused her was within the scope of protection afforded by the duty that was breached. Mathieu v. Imperial Toy Corp., 94-952 (La.11/30/94), 646 So.2d 318, 321-322; Roberts v. Benoit, 605 So.2d 1032 (La.1991). In applying the duty/risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. A negative answer to any of the inquiries results in a determination of no liability. Id.
Neither party disputes the first or second elements of this analysis. A police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his actions. Stroik v. Ponseti, 96-842 -(La. App. 4 Cir. 11/6/96); 683 So.2d 1342. His authority must at all times be exercised in a reasonable fashion, and he must act as a reasonably prudent man under the circumstances. Justin v. City of New Orleans, 499 So.2d 629 (La.App. 4 Cir.1986), unit denied, 501 So.2d 232 (La.1987). The record indicates Sgt. Jones, by striking Roderick with his baton, broke Felicia West-moreland’s arm — the cause in fact of her injury. We note the use of force when necessary to make an arrest is a legitimate police function, but unreasonable or excessive force is a breach of an officer’s duty. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977).
We must decide whether the trial court erred in finding Sgt. Jones did not breach this duty by acting unreasonable under the circumstances or by using excessive force to effectuate the arrest. We are guided by Kyle, 353 So.2d 969. In that case, the supreme court enunciated several considerations in determining whether lKa police officer’s use of force to make an arrest is reasonable. The considerations include the known character of the arres-tee; the risks and dangers faced by the officers; the nature of the offense involved; the chance of the arrestee’s escape if the particular means are not employed; the existence of alternative methods of arrest; the physical size, strength, and weaponry of the officers as compared to the arrestee; and the exigencies of the moment. Id.
Sgt. Jones had knowledge of Roderick’s violent propensities. Sgt. Jones testified he arrested Roderick on a previous occasion for aggravated second degree battery of his wife. On this occasion, Sgt. Jones testified Roderick seriously battered Paulette, who required medical attention for her injuries. Westmoreland argues Roderick submitted to police commands without incident during his previous arrest. The inference urged by Westmore-land is that Sgt. Jones knew or should have known Roderick would not resist arrest in this instance. However, Sgt. Jones gave Roderick ample opportunity to stop the confrontation before intervening. The more reasonable inference, considering the particular facts presented, is Roderick had demonstrated his propensity for violence; he had the capacity to inflict serious harm; and he was not heeding the officer’s command to stop. Westmoreland testified Roderick had a screwdriver and was attempting to stab Paulette, who was crying and truly afraid.
The next consideration is the risk and danger faced by the officer. Westmore-land argues the risk presented to Sgt. Jones was minimal at best because Roder *718 ick’s attention was not focused on Sgt. Jones during the altercation. She further argues Sgt. Jones had a “large assortment of weaponry” available to him which further reduced .his risk and the danger posed. However, Westmoreland testified that Roderick was armed with a dangerous weapon. This factor alone created a serious risk of harm to the intervening police officer. Sgt. Jones used a PR-24 police baton against an assailant armed with a screwdriver. He testified police training dictates the |fiofficer should always try to stay one. step beyond the offender. Sgt. Jones testified mace was also an option, but suggested its use against enraged persons often proved ineffective. It was certainly reasonable for Sgt. Jones to arm himself before attempting to subdue an armed assailant.
The third consideration is the nature of the offense involved, which is aggravated battery. Sgt. Jones testified he learned of the screwdriver when Paulette exited the car yelling for assistance. Westmoreland argues since Sgt. Jones did not see Roderick with a screwdriver, we should consider the nature of the offense less serious. Sgt. Jones had every reason to believe Roderick posed a serious, potentially life-threatening danger to Paulette and Westmore-land. His response to the situation must be evaluated upon what he reasonably believed the situation involved. Even without a weapon, Roderick’s battery against the women was serious in nature.
The fourth consideration is the subject’s chance of escape if the particular means were not employed. There is no indication Roderick posed an escape risk. Therefore, this consideration does not weigh heavily in our determination.
The fifth consideration is the existence of alternative methods of arrest. Westmoreland argues Sgt. Jones had alternative methods of arresting Roderick, which would not have caused her injury. Westmoreland asserts Sgt. Jones could have struck Roderick on the opposite side of his body, or used mace instead of the baton. We note the existence of other available alternative methods does not, in and of itself, render the method chosen unreasonable. Sgt. Jones testified he repeatedly ordered Roderick to stop and drop his weapon. He testified he choose to use the baton because mace is often ineffective against persons in rage. Sgt. Jones struck Roderick on the left shoulder at the point he considered most effective from his angle of approach. The officer was only required to chose a reasonable method of arrest under the circumstances, not necessarily the best available alternative. See Mathieu, 646 |7So.2d at 324.
The sixth consideration is the physical size, and strength and weaponry of the subject compared to the police officer. As discussed, Roderick and Sgt. Jones were both armed. Because Roderick was armed with a dangerous weapon, we find his physical size and strength of little weight in determining his capacity to do immediate harm to the officer and the women.
The final consideration is the exigencies of the moment. Sgt. Jones testified the situation escalated very rapidly. Paulette and Westmoreland were in a dangerous situation with extremely charged circumstances. Sgt. Jones was required to react quickly. He first attempted to command Roderick to stop attacking Westmoreland and Paulette and to drop his weapon. Roderick ignored these commands, which prompted Sgt. Jones to use force. West-moreland argues Sgt. Jones created many of the exigencies because of his lack of preparedness and thought. Although Sgt. Jones did not initially retrieve his weapon and baton from his police car, he was not on duty as he exited the unit and heard Paulette scream for help. The officer was faced with a sudden emergency and he rushed to render assistance to the victims he perceived were in imminent danger. We cannot say his conduct, under the circumstances, fell below the standard of care owed.
*719 CONCLUSION
In an attempt to arrest a violent assailant, Sgt. Jones employed an appropriate level of force to protect Felicia Westmore-land, Paulette Demery and himself from serious injury.
DECREE
For the foregoing reasons, the judgment of the trial court’s finding is affirmed. Costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.