815 So.2d 943 (2002)
Xavier DARBONE, et al.,
v.
STATE of Louisiana, et al.
No. 01-1196.
Court of Appeal of Louisiana, Third Circuit.
February 6, 2002.
Writ Denied May 31, 2002.
*945 Sylvia M. Fordice, Louisiana Department of Justice, Lafayette, LA, Counsel for Defendant/Appellant: State of Louisiana, DOTD.
Todd A. Townsley, Thomas E. Townsley, Townsley Law Firm, Lake Charles, LA, Counsel for Plaintiff/Appellee: Xavier Darbone.
Court composed of SYLVIA R. COOKS, BILLIE COLOMBARO WOODARD, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
The State of Louisiana, through the Department of Transportation and Development (DOTD), appeals the award of damages in favor of Xavier and Pamela Darbone and their daughters, Jennifer, Sarah, and Samantha. For the following reasons, we affirm the judgment of the trial court.

Facts
On October 29, 1995, Pamela Darbone was driving on Louisiana Highway 357 in St. Landry Parish, when her car went off the road, struck a culvert, flipped, and landed in a ditch. Her three daughters were passengers in the car. At the scene of the accident, Mrs. Darbone stated that it felt like something grabbed her right front wheel and caused her to run off the road. Mrs. Darbone and her husband, *946 Xavier, filed suit against DOTD to recover damages for the injuries sustained by their daughters and themselves as a result of the accident.
After a jury trial, all of the Darbones were awarded damages. DOTD filed a motion for judgment notwithstanding the verdict and/or new trial. The trial court held a hearing on the motion. At the conclusion of the hearing, the trial court granted the motion in part and denied the motion in part. The trial court granted the motion for JNOV to the extent that it reduced the jury's awards for loss of consortium in favor of Xavier and Pamela from $150,000 to $100,000 and $250,000 to $100,000, respectively, and reduced the jury's award of $200,000 in future medical benefits in favor of Jennifer to $125,000. The motion for new trial was denied. DOTD appeals, assigning seven errors for review.

Plaintiffs' Expert
DOTD assigns as error the trial court's acceptance of Dr. Edward Rohmberg as an expert in highway maintenance and accident reconstruction. Dr. Rhomberg has a bachelor of science in civil engineering and a Master's and a Ph.D. in soil mechanics. He testified that he has been qualified as an expert in highway maintenance and highway safety in Louisiana courts. The trial court accepted him as an expert in civil engineering, highway safety and maintenance, and accident reconstruction.
DOTD's expert, Francis Wyble, has a bachelor of science in civil engineering and worked with DOTD his entire career. Since his retirement, he has continued to appear as an expert witness in cases for the department. During his tenure with DOTD, Mr. Wyble had experience in highway construction, maintenance, and as an operations engineer. He was accepted by the trial court as an expert in highway maintenance and accident reconstruction.
During his testimony, Dr. Rhomberg testified that he did not try to reconstruct this accident and he did not give any opinions on this issue. Accordingly, we find that any error in the trial court's acceptance of him as an expert in accident reconstruction was harmless.
At the conclusion of questioning by counsel for the parties on his qualifications, the trial court questioned Dr. Rhomberg regarding his study and experience in the areas of highway maintenance. Specifically, the court questioned Dr. Rhomberg regarding his experience in maintenance of asphalt highways. Dr. Rhomberg testified that his experience in this area was primarily private study, although he had occasion to study this field in the course of continuing education for the maintenance of his license as a civil engineer.
"A trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous." Mistich v. Volkswagen of Germany, Inc., 95-939, p. 8 (La.1/29/96); 666 So.2d 1073, 1079. The trial court personally questioned Dr. Rhomberg and satisfied itself regarding his qualifications and expertise as to the issues presented herein. While Dr. Rhomberg does not have the personal experience in the area of asphalt that Mr. Wyble has, we do not find the trial court's acceptance of him as an expert in highway maintenance to be clearly erroneous.

Motion for Judgment Notwithstanding the Verdict and/or New Trial
DOTD assigns as error the jury's finding that the cracks in the roadway which Mrs. Darbone alleged caused her to run off the road were unreasonably dangerous and created an unreasonable risk of harm. *947 It made these same assertions in its motion for JNOV which was denied by the trial court.

Standard of Review
In Broussard v. Stack, 95-2508, pp. 14-16 (La.App. 1 Cir. 9/27/96); 680 So.2d 771, 779-81 (citations omitted), the court considered the standards of appellate review for the denial of a motion for JNOV, grant of a motion for JNOV, and denial of a motion for new trial, holding:
In ruling on a motion for judgment notwithstanding the verdict (JNOV) under LSA C.C.P. art. 1811, the trial court is required to employ the following legal standard: A JNOV should be granted only if the trial court, after considering the evidence in the light most favorable to the party opposed to the motion, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on that issue. The trial judge must construe the evidence and make inferences in favor of the party opposing the motion. Additionally, in applying this standard, the court cannot weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. If there is substantial evidence opposed to the motion of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion must be denied. Stated more simply, a trial court can grant a JNOV only when a jury's verdict is one which reasonable people could not have rendered; if reasonable persons could have arrived at the same verdict given the evidence presented to the jury, then a JNOV is improper.
The standard to be applied by the appellate courts in reviewing the grant or the denial of a JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous.
. . . .
The motion for new trial requires a less stringent test than for a JNOV in that such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. In considering a motion for new trial, the trial judge is free to evaluate the evidence without favoring either party; he may draw his own inferences and conclusions and may evaluate the credibility of the witnesses to determine if the jury has erred in giving too much credence to an unreliable witness.

Unreasonable Risk of Harm or Unreasonably Dangerous?
The Darbones presented factual evidence in the form of testimony and pictures, as well as expert opinion testimony, on the condition of the highway where Mrs. Darbone's car ran off of the roadway. Mrs. Darbone testified that the accident happened when her steering wheel jerked toward the right and she lost control of the car. The car went airborne, flipped over, and landed upside down in a ditch. According to Mrs. Darbone, it felt like her tire was stuck in a rut just before she ran off the road. Her car was a new Toyota Camry, and she had not had any problems with it before the accident. She denied being distracted by her children or the radio when the accident occurred. She also denied that there was an animal or stick in the road that caused her to jerk the steering wheel.
Mrs. Annabelle Wyble lives on Highway 357. Mrs. Darbone's car ended up in the ditch in front of her home. Mrs. Wyble testified that the highway was very bumpy and that if a tire hits a bump in the road the wrong way it pulls the car toward the *948 ditch. She also testified that immediately after the accident Mrs. Darbone told her that it felt like something grabbed the tires of her car and pulled her to the right.
Mr. Clifford Newman, an attorney in Lake Charles, Louisiana, was originally contacted by the Darbones to investigate the accident and to consider representing them on any claims they might have as a result of the accident. Mr. Newman went with Mr. Darbone to the scene of the accident a few days after it happened. At that time, he and Mr. Darbone took pictures of various sections of the roadway in the vicinity where the accident occurred and made observations regarding the roadway.
Mr. Newman first observed that there had been some repair work on cracks in the roadway and that the outer portion of Mrs. Darbone's lane of travel sloped toward the ditch. He explained that it appeared as though the lane of travel had been expanded and a long, continuous crack marked the expansion. Mr. Newman also testified that the expanded section appeared to be sinking toward the ditch. According to Mr. Newman, the crack was wide enough at some points that he could actually put his foot in it. In his opinion, the crack was about 2" deep at that point. He had Mr. Darbone photograph his foot in the crack to show the width of it. He further testified that he placed an ink pen in one of the cracks and that the tires of a passing car went deep enough into the crack to crush the ink pen. He did not have a measurement device with him at the time and had to estimate the width and depth of the cracks. He estimated the cracks as varying in width from slight to 5" to 5½" to 8" to 10" wide and 1" to 2" in depth. He also testified that he drove over the section of roadway where Mrs. Darbone would have run off of the road and that his car pulled to the right.
Mr. Newman and/or Mr. Darbone took numerous photographs of the roadway which reflect that the condition of the road was as he described it. Reviewing the photographs we observe that the photographs reflect that: 1) a small vehicle traveling on the roadway would encounter the line of cracks described by Mr. Newman as it traveled in the lane of travel Mrs. Darbone was traveling in at the time of the accident; 2) the far right portion of the roadway appears to slope toward the ditch; 3) the slope is adjacent to a long, continuous crack; 4) in at least one area, a crack appeared to be 5" to 5½" wide and 1½" deep; and 3) in at least one area, the top layer of asphalt in a crack appeared to be completely washed out.
Mr. Melvin Villery was the DOTD parish superintendent for St. Landry Parish when Mrs. Darbone's accident occurred. As parish superintendent, he was charged with driving the highways in the parish at least twice a month to monitor the highways' conditions and need for repairs. He was questioned at length by counsel for the Darbones concerning the DOTD maintenance manual and made a number of admissions that were favorable to their case. He acknowledged that a pavement defect more than 1" deep was unacceptable according to the manual. He also agreed that defects more than a couple of inches wide and more than 1" deep can cause a vehicle to pull to the right and that road defects can surprise a driver who is unfamiliar with the road. Further, he agreed that, if the condition of Highway 357 was as bad as described by Mrs. Wyble, it should have been fixed. Regarding the condition of the roadway in front of Mrs. Wyble's house, he stated, "It's a crack. It's a defect, it's a crack." He also testified that if the condition of the roadway *949 causes it to "ride rough" he would assume that it should be fixed right away.
When examined by counsel for DOTD, Mr. Villery retracted his testimony to some extent, testifying that, according to the DOTD manual, a 2" deep crack, as opposed to a 2" deep pothole, would not have to be repaired and that he had never received any complaints about the condition of the road where Mrs. Darbone's accident occurred. Additionally, he testified that between July and December of 1995 repair work was performed on other sections of Highway 357. In fact, some repairs had been performed on the opposite side of the road from where this accident occurred, and in his opinion, the fact that no repairs were performed on the area where Mrs. Darbone's accident occurred indicated that there was no need for repairs in that area.
When Dr. Rhomberg and Mr. Wyble went to the accident scene, the roadway had already been patched, therefore, they could not measure the depths and widths of the cracks or holes present at the time of the accident. Dr. Rhomberg testified that there were serious defects in the condition of the road at the time of Mrs. Darbone's accident. However, he did not identify any one crack/pothole that caused her to lose control of her car, stating that because there were so many bad places in the road, it was not important to him to identify which pothole caused the accident. He theorized that a defect in the pavement caused the steering wheel to jerk and be directed to the right at which time a second defect was encountered and the car went out of control. He then testified that at 50 m.p.h. a car travels 73.3' per second. Mrs. Darbone went 78' from the roadway to where she struck the driveway, giving her slightly over one second to react, which, according to him, was not enough time to raise her foot from the accelerator and put it on the brake. In his opinion, once Mrs. Darbone was off the highway, it was too late for her to do anything to prevent the accident. Dr. Rhomberg also testified concerning the slope in the roadway identified by Mr. Newman, explaining that the roadway had been widened about 18" twenty years before the accident. In his opinion, the addition of pavement for the widening was consistent with the defects in the road and the sinking or sloping of that area of the roadway. He explained that the area of the addition was not compacted as much as the central portion of the highway, therefore, it was subject to further settlement.
Preston Summers, TFC, of the Louisiana State Police, and Patrick Miller, the tow truck driver who removed Mrs. Darbone's car from the scene of the accident, testified that they did not notice anything on the roadway that could have contributed to the accident. Officer Summers testified that he questioned Mrs. Darbone at the hospital concerning the accident and that, if she had told him that the accident was caused by the condition of the roadway, he would have returned to the accident scene to check the roadway again.
Mr. Wyble testified that there was no crack big enough to "grab a tire" as described by Mrs. Darbone. In his opinion, none of the holes in the area at issue were potholes, as Dr. Rhomberg testified. Rather, he described them as cracks that should not have contributed to this accident. He testified that there were no holes in the roadway in the vicinity of where Mrs. Darbone's car left the roadway that were big enough for the 5" tire on her car to fit into. He opposed Dr. Rhomberg's theory regarding a lateral force being applied to the right front tire of Mrs. Darbone's car as it entered a hole/crack in the roadway, explaining that the theory did not account for the other front tire *950 which would have remained flat on the roadway. He examined the photographs taken by Mr. Newman and was of the opinion that none of the holes/cracks in those pictures were sufficient to "sling" a car off of the road. Further, he explained that the only time a pothole could affect the direction of a vehicle was one that caused a blow out or crimped the rim of the tire.
Throughout his testimony, Mr. Wyble disagreed with Dr. Rhomberg's opinions regarding the holes/cracks in the roadway and whether they contributed to this accident, testifying that cracks do not pull a car off of the road. However, he also testified that a slope in the roadway would.
Further, while Mr. Wyble did not believe that any condition of the roadway caused this accident, he did agree that the defects in the road should have been detected sooner by Mr. Villery and repaired. As to the cause of the accident, Mr. Wyble was of the opinion that "[f]or whatever reason, she drifted off of the highway." He did agree with Dr. Rhomberg that once Mrs. Darbone was off the roadway, there was nothing she could do to correct it.
DOTD has a legal duty to maintain the highways in a reasonably safe condition. Sinitiere v. Lavergne, 391 So.2d 821, 824 (La.1980). This duty "extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition." Sinitiere, 391 So.2d at 825. It extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or momentarily inattentive. Trahan v. State, Department of Transportation & Development, 536 So.2d 1269, 1273 (La. App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989). DOTD cannot knowingly allow a condition to exist which is a hazard to a reasonably prudent driver. In such a case, DOTD must take reasonable measures to eliminate or reduce the risks associated with the dangerous condition or may post adequate signs to warn the public of the danger, risk, or hazard involved. Trahan, 536 So.2d at 1273.
Odom v. City of Lake Charles, 00-1050, p. 4 (La.App. 3 Cir. 1/31/01); 790 So.2d 51, 54, writ denied, 01-1198 (La.6/22/01); 794 So.2d 787, quoting Sevario v. State ex rel Dep't of Transp., 98-1302, pp. 14-15 (La. App. 1 Cir. 11/10/99); 752 So.2d 221, 231-232, writ denied, 99-3457 (La.4/7/00); 759 So.2d 760 (footnote omitted).
Not every imperfection or irregularity in a roadway renders DOTD liable. It is "only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances." Lasyone v. Kansas City S. R.R., 00-2628, p. 8 (La.4/3/01); 786 So.2d 682, 690. The facts of each case determine whether the roadway at the scene of the accident was in an unreasonably dangerous condition. Hunter v. Department of Transp. and Dev., 620 So.2d 1149 (La.1993). There is no formula that can be mechanically applied to determine whether a condition presents an unreasonable risk of harm. Oster v. Department of Transp. and Dev., 582 So.2d 1285 (La. 1991).
In ruling on the motion for JNOV, the trial court had to determine whether the evidence when viewed in the light most favorable to the Darbones pointed so strongly and overwhelmingly in favor of DOTD that reasonable persons could not arrive at a contrary verdict on the issue of whether the roadway where the accident happened was an unreasonably dangerous condition or presented an unreasonable risk of harm. The jury was presented not only with the expert testimony of Dr. *951 Rhomberg and Mr. Wyble, but also with the testimony of Mrs. Darbone, Mrs. Wyble, Mr. Newman, and Mr. Villery. Mrs. Darbone testified that something made her wheel jerk to the right. Mrs. Wyble and Mr. Newman testified that driving on the road caused their vehicles to pull to the right. Mr. Villery and Mr. Wyble admitted that the road contained defects that should have been repaired. And, while Mr. Wyble did not agree with Dr. Rhomberg's theory of the accident, he did testify that the 18" portion that had been added to the roadway could have caused a car to pull to the right. To some extent, this testimony supported Dr. Rhomberg's theory that the demarcation line of cracks in the road where the roadway had been widened caused the accident. We cannot say that the trial court's denial of the motion for JNOV was manifestly erroneous.
For these same reasons, we find no error with the trial court's denial of DOTD's motion for new trial.

Cause-in-Fact
DOTD next argues that the jury erred in finding that the roadway was a cause-in-fact of Mrs. Darbone's accident. In Lasyone, 786 So.2d at 691 (citations omitted), the supreme court reviewed the concept of cause-in-fact, stating:
A party's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm. For example, the act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it. While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability. Whether an action is the cause-in-fact of the harm is essentially a factual determination that is usually left for the factfinder.
The jury was presented with two versions of how this accident occurred: 1) the condition of the roadway caused Mrs. Darbone's car to jerk to the right which caused her to lose control of the car such that she could not stop the sequence of events that followed; and 2) the roadway was defective, but the defects did not contribute to the accident; rather, Mrs. Darbone left the road for an unknown reason. The jury's acceptance that the first version occurred included a determination that the condition of the roadway was a cause-in-fact of the accident. We have determined that the trial court did not err in denying DOTD's motion for JNOV. Accordingly, we find no error with the jury's conclusion that the condition of the roadway was a cause-in-fact of the accident.

Apportionment of Fault
A trier of fact's apportionment of fault cannot be disturbed unless it is clearly wrong. Duncan v. Kansas City S. Ry. Co., 00-66 (La.11/3/00); 773 So.2d 670. As just discussed, the jury was presented with two versions of how this accident occurred. According to the first version, Mrs. Darbone was not at fault; under the second version, she was solely at fault. Again, having determined that the trial court did not err in denying DOTD's motion for JNOV, we find no error with the jury's conclusion that Mrs. Darbone was not at fault.

Excessiveness of Damages
DOTD asserts that the jury's damage awards were excessive and that the trial court's reduction of Mr. and Mrs. Darbone's loss of consortium awards and Jennifer's future medical expense award were insufficient.
The assessment of damages by a jury is a determination of fact. On appeal, we "review the exercise of discretion by the trier of fact." Youn v. Maritime Overseas *952 Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). We cannot disturb an award of damages by a jury, unless the trier of fact abused its discretion in making the award. Our role in the review of a jury's award of general damages was set forth in Youn, 623 So.2d at 1261:
[T]he discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
The manifest error standard of review applies to the grant and/or denial of a motion for JNOV on the issue of damages as well as on the issue of liability. Davis v. Wal-Mart Stores, Inc., 00-445 (La.11/28/00); 774 So.2d 84.
The jury made the following damage awards to the Darbone children:

Samantha
 Physical pain and suffering $ 10,000.00
 Mental pain and suffering $ 10,000.00
 Past medicals $ 2,352.93
 Scarring and disfigurement $ 10,000.00
Sarah
 Physical pain and suffering $500,000.00
 Mental pain and suffering $250,000.00
 Past medicals $236,571.12
 Future medicals $200,000.00
 Scarring and disfigurement $200,000.00
 Loss of enjoyment of life $200,000.00
Jennifer
 Physical pain and suffering $150,000.00
 Mental pain and suffering $250,000.00
 Past medicals $ 33,199.39
 Future medicals $125,000.00[1]
 Scarring and disfigurement $250,000.00
 Loss of enjoyment of life $150,000.00

DOTD complains that the damages awarded these young girls is excessive.

Samantha
Samantha was six years old at the time of the accident and eleven years old at the time of trial. In the accident, she sustained a 2" gash to her right forehead. As a result of this injury she suffered headaches and has a permanent scar. The scar hurts and tingles when she brushes her hair. Her pediatrician testified that it was reasonable for her to still experience sensitivity from the scar and did not indicate that this would ever be completely resolved. Due to fears that Samantha exhibited to her family, her pediatrician referred her to a neurologist for a consultation. After testing was performed, she was diagnosed as suffering from a phobic reaction to the accident.
While we might not have awarded Samantha as much as the jury did for her physical pain and suffering and for her scarring and disfigurement, we cannot say that these awards are "beyond what a reasonable [jury] could assess" under these circumstances.

Sarah
Sarah, who was ten years old at the time of the accident, suffered very serious injuries as a result of the accident: a fractured sternum, contused heart, punctured lungs, cuts and scarring to her forehead, laceration to her tongue, and multiple fractured thoracic vertebrae. She was in ICU for two weeks and could not attend school for one year. As a result of the *953 injuries to her back, she developed kyphosis which is a curvature of the spine. Actually, she developed a hump on her back. Treatment for her back was long and arduous. At first, a brace was used to attempt to correct the curvature without surgery; it was unsuccessful. Ultimately, Sarah had to undergo seven surgeries on her back and faces another surgery to remove the hardware that was installed in a previous surgery. As expected, she suffered pain with each surgery, and she continues to suffer back pain to this day. The numerous surgeries resulted in large scars on her neck and back. Essentially, she spent her late childhood and early teen years suffering pain and missing out on the fun things a child that age normally enjoys. We find no error with the jury's damage awards for Sarah's injuries.

Jennifer
Jennifer suffered a fractured skull in the accident and received multiple lacerations to her face, upper arm, and upper leg. Her doctor testified that there was some cognitive impairment as a result of the accident, and she testified that it was more difficult for her to study and concentrate following the accident. However, there was no testing performed to establish that her cognitive abilities were impaired as a result of the accident. She was hospitalized for two weeks and missed one month of school as a result her injuries.
Jennifer's worst scars were on the right side of her face, her right temple, right eye, and right cheek. The mandibular branch of a facial nerve was damaged causing partial paralysis of her upper lip. As a result, her smile is asymmetric and she is unable to perform some facial expressions. At the time of trial, she had undergone two scar revisions, one to her face and one to her upper arm. She will undergo at least one more scar revision.
At the time of the accident, Jennifer was fourteen years old. At an age when most children are already self-conscious, every time Jennifer looked at herself she saw her scars, and she became extremely self-conscious. This was only worsened when she was called "Scar Face" or "Crash Dummy" by some of her schoolmates. She attempted to hide her scars by wearing her hair in her face, and she did not wear clothes that she would have worn otherwise, like a swimsuit, because her scars would show.
While we consider the jury's damage awards in favor of Jennifer to be somewhat high, we do not find them to be error. We are mindful of the fact that the jury had the opportunity to see her scars and judge for themselves, not only the severity of the scars, but the impact they have had on her.

Loss of Consortium
DOTD also complains that the trial court's reduction of the jury's awards to Mr. and Mrs. Darbone for loss of consortium was insufficient. The jury awarded Mr. Darbone $150,000 and Mrs. Darbone $250,000; the trial court reduced each award to $100,000 pursuant to DOTD's motion for JNOV.
The Darbones have four children. Their oldest child is a son who did not live at home at the time of this accident. It is evident that the lives of Mr. and Mrs. Darbones and their daughters as a family were disrupted by the accident. Their relationships with each daughter were disrupted as well. Due to the treatment required and the effects of the girls' injuries, especially Sarah and Jennifer, they have been unable to resume the activities they enjoyed together before the accident. This disruption continued through the date of the trial and may continue for some *954 time considering that Jennifer and Sarah face additional surgeries.
The elements of a parent's loss of consortium claim are: (1) loss of love and affection, (2) loss of society and companionship, (3) loss of performance of material services, (4) loss of financial support, (5) loss of aid and assistance, and/or (6) loss of fidelity. Morrison v. Kappa Alpha Psi Fraternity, 31,805 (La.App. 2 Cir. 5/7/99); 738 So.2d 1105, writs denied, 99-1607 (La.9/24/99); 749 So.2d 634, 99-1622 (La.9/24/99); 749 So.2d 635, 99-1668 (La.9/24/99); 747 So.2d 1120. Not every element must be present for an award for loss of consortium to be made. Id.
Under the circumstances of this case, we cannot say that the trial court's reduction of their loss of consortium claim to $100,000 each was insufficient.

Jennifer's Future Medical Expenses
The trial court closely reviewed the evidence pertinent to the jury's award of $200,000 in favor of Jennifer for her future medical expenses and, based upon her treating physician's testimony, determined that $200,000 was excessive, reducing the award to $125,000.00. We have reviewed the record and do not find this amount to be manifest error.

Statutory Cap on Damages
DOTD argues that the trial court erred in failing to apply the statutory cap of $500,000 provided for in La.R.S. 13:5106 to the general damage awards in favor of Jennifer and Samantha. The accident occurred on October 29, 1995. The Darbones filed suit on October 23, 1996. Act 828 of 1995 amended La.R.S. 13:5106 to establish a variable cap on general damage awards against the State. Because the cap was to be established annually, application of the appropriate cap was established according to "the time of judicial demand." La.R.S. 13:5106 was amended again in 1996 and established a fixed cap of $500,000; the amendment eliminated "the time of judicial demand" phrase. See Acts 1996, 1st Ex.Sess., No. 63. Act 63 became effective May 9, 1996.
DOTD argues that the elimination of the phrase "the time of judicial demand" was not substantive; accordingly, the Act should be applied retroactively to the date of the Darbone's accident. This assignment was answered in Castille v. State, through Department of Transportation & Development, 99-1334, p. 7 (La.App. 3 Cir. 2/2/00); 758 So.2d 823, writ denied, 00-711 (La.4/28/00); 760 So.2d 1177, where this court held:
Act 63 of 1996 did not change the effect of La.R.S. 13:5106(B)(1); it still limits a plaintiffs right regarding the amount of recoverable tort damages. Therefore, the prior classification of this statute as substantive in Dubois [v. State Farm Ins. Co., 571 So.2d 201, (La. App. 3 Cir.1990), writ denied, 575 So.2d 367 (La.1991) ] and Socorro [v. City of New Orleans, 579 So.2d 931 (La.1991) ] is applicable to the 1996 amendment of La.R.S. 13:5106(B)(1).
This assignment is without merit.

Future Medical Expenses and Reversionary Trust
DOTD also urges that the trial court erred in refusing to order that future medical costs be paid into a reversionary trust in accordance with La.R.S. 13:5106B(3). The reversionary trust did not exist until the 1996 amendment of La.R.S. 13:5106. See Acts 1996, 1st Ex. Sess., No. 63, which became effective May 9, 1996. "La.R.S. 13:5106 affect[s] substantive rights and [cannot] be applied retroactively." Cole v. State ex rel. Dep't of Transp. & Dev., 99-912, p. 20 (La.App. 3 *955 Cir. 12/22/99); 755 So.2d 315, 328, writ denied, 00-199 (La.4/7/00); 759 So.2d 766.
This assignment is without merit.

Conclusion
For these reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the State of Louisiana, through the Department of Transportation and Development.
AFFIRMED.
NOTES
[1] The jury's $200,000.00 award for future medical expenses was reduced by the trial court pursuant to DOTD's motion for JNOV.