STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1057


PAUL M. ARCENEAUX

VERSUS

ROY DE LA ROSA, ET AL.


**********


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 97-4017
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE


**********


BILLIE COLOMBARO WOODARD
JUDGE


**********


Court composed of Billie Colombaro Woodard, Elizabeth A. Pickett, and John B. Scofield,[*] Judges.

AFFIRMED.

Skipper Maurice Drost
Mitchell P. Bergeron
Attorneys at Law
Post Office Box 208
Sulphur, Louisiana 70664-0208
(337) 527-9306
COUNSEL FOR
PLAINTIFF/APPELLANT
    Paul M. Arceneaux

Mark Terrance Hoychick
Young, Hoyhick & Aguillard
Post Office Drawer 391
Eunice, Louisiana 70535-0391
(337) 457-9331
COUNSEL FOR
PLAINTIFF/APPELLANT
    Paul M. Arceneaux

_____

[*]Judge John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore*.

Thomas Joseph Solari
Woodley, Williams, Boudreau
Post Office Box 3731
Lake Charles, Louisiana 70602
(337) 433-6328
COUNSEL FOR
DEFENDANT/APPELLEE
    Players Lake Charles, Inc.
    Players Riverboat, LLC

Robert Michael McHale  Jr.
Attorney at Law
910 Ford St.
Lake Charles, Louisiana 70601
(337) 430-0151
COUNSEL FOR
DEFENDANT/APPELLEE
    Roy De La Rosa

WOODARD, Judge.

Mr. Paul M. Arceneaux appeals the trial court's judgment dismissing his battery claim against Mr. Roy De La Rosa and his negligence claim against Players Lake Charles, Inc. and Players Riverboat, L.L.C., which have merged into Players Lake Charles, L.L.C. (Players). We affirm.

\* \* \* \* \*

This appeal arises from an altercation between Mr. Arceneaux and Mr. Roy De La Rosa which occurred on the Players II casino boat on June 9, 1996. Both sustained injuries in the fight. Mr. Arceneaux filed suit against Mr. De La Rosa and the boat's owners, Players. Mr. De La Rosa reconvened against Mr. Arceneaux and asserted a cross-claim against Players for indemnity or contribution if he should be found liable for any damages Mr. Arceneaux sustained. Mr. Arceneaux and Mr. De La Rosa asserted that each committed an assault and/or battery on the other and that Players was negligent in providing inadequate security.

A jury found that both men had consented to the fight and, therefore, awarded neither party damages. It also found no fault on Players' part in causing Mr. Arcenaux's injuries. Thus, it awarded no damages. Mr. Arceneaux moved for a new trial and a judgment notwithstanding the verdict (JNOV), both of which the trial court denied. He appeals, alleging that the trial court gave the jury erroneous instructions given a Louisiana Supreme Court case rendered days before trial of this matter and that the jury's failure to assess fault against Players was manifestly erroneous.

\* \* \* \* \*

**STANDARD OF REVIEW**

Mr. Arceneaux asserts that the trial court erred in refusing to grant his motion for a new trial or motion for a judgment notwithstanding the verdict because of the Louisiana Supreme Court's abolition of the aggressor doctrine just days before trial. Because the jury instructions referenced the aggressor doctrine, he urges us to conduct a *de novo* review of the record. "When the trial court commits legal errors which

interdict the jury's factfinding process, the manifest error standard is not applicable [and,] [i]f the record is complete, the appellate court must undertake an independent de novo review."[1] Thus, we must determine whether the jury instructions, in light of supreme court's recent pronouncement abolishing the aggressor doctrine, interdicted the factfinding process.

*Aggressor Doctrine*

"[U]nder the aggressor doctrine, the plaintiff is deemed to have consented to the physical retaliation by provoking the defendant, thereby relieving the defendant of liability for any damages that may result."[2] In *Landry v. Bellanger,*[3] the Louisiana Supreme Court held that "the aggressor doctrine no longer has a place in Louisiana tort law."[4]

Nonetheless, in reviewing that doctrine, the supreme court distinguished between the notion of consent, which is presumed under the aggressor doctrine, and the notion of lack of consent which is an element of battery. Specifically, the court stated:

> Louisiana's intentional tort doctrine has traditionally afforded an intentional tortfeasor a full defense if he can establish *consent*, privilege or self-defense, *or* enough provocation to trigger the aggressor doctrine; and a partial defense if the defendant can show a "merely verbal" provocation for a mitigation of damages.

> *Hence, the existence of consent means the defendant did not commit a tort* and the existence of a privilege means the defendant's tort was justified. *Conversely,* Louisiana's aggressor and mitigation doctrines are victim-fault defenses. Neither theory implies that no tort has occurred or that the defendant's conduct was justified, but instead seek to penalize the victim. . . . "On this analysis the percentage-fault approach should replace both the aggressor doctrine and the mitigation

---

[1]*Mullican v. Transamerica Ins. Group*, 00-105, p. 10 (La.App. 3 Cir. 11/2/00), 773 So.2d 207, 213, *writ denied*, 00-3276 (La. 2/2/01), 784 So.2d 5 (quoting *Clay v. Intern'l Harvester Co.*, 95-1572, p. 19 (La.App. 3 Cir. 5/8/96), 674 So.2d 398, 409).

[2]*Landry v. Bellanger,*02-1443, p. 13 (La. 5/20/03), 851 So.2d 943, 953.

[3]*Id.*

[4]*Id.* at 953.

2

doctrine, *while leaving the full defenses of consent and privilege intact.*"[5]

*Jury Instructions*

In denying Mr. Arceneaux's motions for a new trial and JNOV, the trial court found "[i]n an appropriate situation, it [*Landry*] may have affected the outcome of a case. It would not have affected the outcome of this case. So I'm not granting either the new trial or the judgment JNOV." We must agree.

Adequate jury instructions must fairly and reasonably denote the issues and provide correct principles of law for the jury to apply to those issues.[6] The adequacy of the jury instructions must be assessed in light of the instructions as a whole.[7] An appellate court must exercise great restraint before overturning a jury verdict because the instructions were so erroneous as to be prejudicial.[8] We may not ignore the manifest error standard of review unless the jury interrogatories are so inadequate or incorrect as to prevent the jury from basing its verdict on the law and the facts.[9] Viewing the instructions as a whole, we find nothing that constitutes reversible error.

The trial court instructed the jury, in pertinent part:

> Paul M. Arceneaux has asserted a claim against Roy De La Rosa for the intentional tort of battery. Roy De La Rosa has counterclaimed against Paul M. Arceneaux for the same claim, intentional tort of battery. In both situations, the same standard applies. The basic standard applicable to Defendant is that he must refrain from intentional invasions of, or interference with, the physical integrity of the Plaintiff. By "intent" in this context, I mean the purpose or state of mind with which a person acts.
>
> Intent means that the actor either (1) consciously desires the physical result of his actions or (2) knows that the result is substantially certain to follow from his actions. A Defendant who is guilty of an intentional tort is liable for all of the consequences of his actions, even those which he did not actually intend or which were not reasonably foreseeable.

---

[5]*Id.* at 952 (citations omitted) (emphasis added).

[6]*Evans v. Tudor Constr.*, 95-1029 (La.App. 3 Cir. 1/31/96), 670 So.2d 447.

[7]*Id.*

[8]*Id.*

[9]*Doyle v. Piccadilly Cafeterias,* 576 So.2d 1143 (La.App. 3 Cir. 1991).

3

Battery is a harmful or offensive contact with a person resulting from an act intended to cause the Plaintiff to suffer such a contact, under circumstances in which the Defendant has no reason to suspect that the Plaintiff would consent to such a contact. Accordingly, if you find that the Defendant committed a battery [intentional tort] upon Plaintiff, but you also find that Plaintiff consented to the fight that produced the battery, then you must return a verdict for Defendant, unless you find that the force used by Defendant is not reasonably anticipated and is in excess of that necessary for self-defense. The use of such unnecessary and unanticipated force nullifies Plaintiff's consent and removes it as a bar to his recovery. *Additionally, an aggressor is precluded from recovering damages which he incurs as a result of his own actions in provoking the altercation.* (Emphasis added).

Even though the trial court included a one-sentence reference to the aggressor doctrine, it did not elaborate on its requirements of intentional provocation. Rather, the jury instruction, as a whole, informed the jury that if the Defendant committed a battery, but the Plaintiff consented to the fight, it must return a verdict for the Defendant unless he used unnecessary force. This is a correct statement of the law.

The jury found that, both, Mr. Arceneaux and Mr. De La Rosa consented to the fight. Lack of consent is an element that each party had to prove in order to prove a battery. Thus, the jury found that neither proved the necessary element of lack of consent. We cannot say that the trial court's instructions were so erroneous as to prevent the jury from basing its verdict on the law and the facts. Accordingly, we decline to usurp the jury's function as factfinder with a *de novo* review of the record. Accordingly, we turn to a review of the trial court's decisions under the applicable standards of review.

**MOTION FOR NEW TRIAL**

The trial court's discretion in ruling on a motion for new trial is great, and we will not disturb its decision on appeal, absent an abuse of that discretion.[10] For the reasons we detailed above, we have already determined that the jury's verdict is not contrary to the law. "[T]he jury's verdict should not be set aside if it is supportable

---

[10]*Davis v. Wal-Mart Stores, Inc.*, 00-445 (La. 11/28/00), 774 So.2d 84.

4

by any fair interpretation of the evidence."[11]  In the instant case, both parties vigorously contested the other's version of the facts of the altercation. In deciding whether to grant a new trial, the trial court may evaluate evidence and assess the credibility of witnesses without favoring any party and draw its own inferences and conclusions.[12]  The trial court agreed with the jury and denied Mr. Arceneaux's motion for a new trial. We find no abuse of discretion in its decision.

## MOTION FOR JNOV

"A JNOV should be granted only if the trial court, after considering the evidence in the light most favorable to the party opposed to the motion, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on that issue."[13]  Thus, the standard for granting a JNOV is even more stringent than the standard for granting a new trial.  As we have already determined that the trial court did not abuse its discretion under the less demanding standard than a motion for new trial requires, we do not find any error in its decision to deny the JNOV.

## PLAYERS' FAULT

Mr. Arceneaux alleges Players is responsible for the injuries he sustained in the altercation with Mr. De La Rosa because it failed to provide adequate security.  The trial court entered a directed verdict for Players on this issue, and Mr. Arceneaux did not appeal that verdict.  However, he further asserts that he sustained additional injuries when Players' security guards grabbed him and put him on the ground to arrest him. Thus, we are concerned, only, with Players' conduct towards him after his altercation with Mr. De La Rosa.  The jury found that Players bore no fault for any of his injuries.

---

[11]*Id*. at 93 (quoting *Gibson v. Bossier City Gen. Hosp.*, 594 So.2d 1332 (La.App. 2 Cir.1991)).

[12]*Id.*

[13]*Darbone v. State*, 01-1196, p. 3 (La.App. 3 Cir. 2/6/02), 815 So.2d 943, 947, *writ denied*, 02-732 (La. 5/31/02), 817 So.2d. 94 (quoting *Broussard v. Stack*, 95-2508 (La.App. 1 Cir. 9/27/96), 680 So.2d 771).

We use the duty-risk analysis to determine whether the law permits a person to recover for a tort.[14] This analysis involves questions of duty, breach of duty, scope of duty, causation, and injury.[15] We review the jury's factual determinations under the manifest error standard of review.

Mr. Arceneaux testified that the security officers used excessive force against him, resulting in a crack in a previous fusion in his back. Players contends that he did not prove that the officers used excessive force or that their actions caused this injury. A review of the record reveals that the jury could have reasonably determined that Players did not breach its duty to Mr. Arceneaux and/or that the officers' actions did not cause or contribute to his back injuries.

Players' security guards had a duty to exercise their authority in a reasonable fashion and act as a reasonably prudent man under the circumstances.[16] Mr. Arceneaux testified that after the altercation between him and Mr. De La Rosa began, security guards restrained Mr. De La Rosa and escorted Mr. Arceneaux to the boat's exit, where the turnstiles were located. They left him there with two different security guards. He stated that he requested an ambulance because his leg and back were hurting and that Ms. Sandy Dukes, an EMT and security guard, tried to provide assistance, but Mr. Danny Walker, another security guard, commanded him to leave the premises. Mr. Arceneaux insisted on filing an incident report because he intended to file charges against Mr. De La Rosa, but Mr. Walker insisted that he leave or be arrested. Mr. Arceneaux stated that when he refused to leave:

> I was standing straight. I didn't put up no fight in the sense they said I was fighting with these people. I just stood, you know, straight with my arms beside me tight, and I kept asking "Why are y'all arresting me? I did nothing." And someone pulled my legs out from under me, and I went down. Then, whenever I was down on the – the floor, I'm assuming it was this Danny Walker because he's the only one that had this suit on. It appeared that – he had his knees or his feet in my back, and he grabbed me by the shoulders and jerked me up twice . . . .

---

[14]*Bordelon v. St. Frances Cabrini Hosp.,* 93-1331 (La.App. 3 Cir. 5/4/94), 640 So.2d 476.

[15]*Id.*

[16]*Westmoreland v. City of Natchitoches*, 00-320 (La.App. 3 Cir. 10/4/00), 771 So.2d 715.

According to Mr. Arceneaux, someone, then, handcuffed him and took him to the security office where the police picked him up. Later, he was convicted for trespassing on Players' property.

Cornelius Broussard was working as a casino host at the time of the incident. He was the first Players' employee on the scene, and he testified that Mr. Arceneaux pushed Mr. De La Rosa and, then, Mr. Broussard grabbed Mr. Arceneaux to separate the two men, as Mr. Arceneaux repeatedly tried to kick them.

Mr. Danny Walker, a security supervisor for Players who responded to the incident, testified that he responded to Mr. Broussard's call and arrived after Mr. Arceneaux and Mr. De La Rosa had been separated and security was escorting Mr. Arceneaux to the turnstile area. Accordingly, he went to the area to speak with Mr. Arceneaux. He stated:

> Once I arrived at the turnstile, they had a – the security guard that worked the turnstile, – because I don't remember if it was Deville or Martindale – the two of them were there. I believe the EMT, Sandy Dukes, was there, and shortly after arrived along – Jim Martin, who was land security supervisor, came up along with Steve Lamb, the city policeman.

He testified that he had already taken Mr. De La Rosa's statement and was attempting to get a statement from Mr. Arceneaux, but he was demanding transportation to a hospital for an MRI. When Mr. Walker told him he would call an ambulance, but at Mr. Arceneaux's own expense, and Mr. Arceneaux continued to demand that "I [Mr. Walker] would take him to a f---ing hospital to have an MRI run." Because of Mr. Arceneaux's belligerence and vulgarity which was creating a scene, Mr. Walker repeatedly asked him to leave. When he refused, Officer Lamb threatened arrest, but he continued to be belligerent. He further stated:

> Officer Lamb advised him that he was being placed under arrest, and at that time Steve got one arm, I got the other arm, and we basically helped him to the floor and placed the handcuffs on him. . . . Once we made physical contact with him, it was like we were just laying him on the floor. It's like his legs gave way. . . And also once he got on the floor, he was hollering that his back was hurt, and he was squirming and everything, but he was the only person that was moving.

7

He denied standing on or putting his knees in Mr. Arceneaux's back, nor did he see anyone else do either of these things.

Mr. Steven Lamb, officer with Lake Charles Police Department, was also working as a private security guard at Players. He stated that he wore his police uniform while working at the casino and retained arrest powers at all times within the city limits of Lake Charles. Players summoned Officer Lamb to the turnstiles area, where Mr. Arceneaux continuously demanded an MRI to which Officer Lamb offered to call an ambulance but informed him that Players could not order an MRI.

Similarly, Ms. Sandy Dukes, a security officer and emergency medical technician (EMT), testified that when she responded to Officer Martindale's call to the scene, she offered Mr. Arceneaux medical assistance but that he demanded that she perform an MRI and x-rays on his back. She told him that she could render basic first aid or offer him transportation by ambulance, but she could not perform an MRI or x-rays herself. She testified that he would not allow her to render any treatment and that he was belligerent and using foul language. Specifically, she stated:

> At one point, he demanded that I get him to a hospital. And once again I advised him that I couldn't do anything. I kept asking him on previous times if he wanted an ambulance. He said no. And then I asked him a couple of more times after that. He said no, and then he just wouldn't answer at all after a point.

Moreover, from her observation of Mr. Arceneaux, he did not need first-aid and was not injured to such a point that he could not drive himself to a hospital.

Mr. Harold Martindale, a Players security officer, was working the turnstile when Mr. Arceneaux was escorted out. He testified that security told him, repeatedly, to leave the premises and that Mr. Walker attempted to put him under arrest after he refused, but he resisted the arrest.

Accordingly, Mr. Arceneaux provided no corroboration for his version of the incident. The security officers contradicted his testimony, requiring the jury to make a credibility determination. Thus, we find the jury, reasonably, could have found that Players did not breach any duty to Mr. Arceneaux.

Additionally, we find a reasonable basis for a determination that Players' conduct did not cause any of his injuries. Causation is usually determined by using

8

a "but for" test.[17] However, when there is more than one action that, allegedly, precipitated an accident, we decide whether a particular defendant's conduct was a substantial factor in the plaintiff's injuries.[18]

In the instant case, Players presented an abundance of evidence of other potential causes of Mr. Arceneaux's injuries. Thus, it could have reasonably found that Players' conduct was not a substantial factor in his injuries. First, Mr. Arceneaux complained of back pain and requested an MRI *after* his fight with Mr. De La Rosa but *prior* to the incident with Mr. Walker and the other guards. And once he reached the hospital after the incident, he told the doctors that he had been pushed down some stairs but did not recall telling them anything about being assaulted or pinned down by the officers.

Initially, he injured his back in 1988 while working at a paper mill, ultimately, requiring a fusion in 1991. He testified that he had an auto accident in July of 1995, causing injuries which required back therapy and he filed a lawsuit for, among other things, "injuries to his lower left back . . . . and aggravating preexisting injuries . . ." The incident at Players casino occurred on June 9, 1996. On January 9, 1997, he went to West Cal-Cam Hospital and told the physicians that he hurt his back the previous weekend while celebrating. On October 12, 1997, he dove in the front seat of his car to avoid getting hit by his wife who was driving around his car and he hit the kick panel on the passenger side. As a result of that incident, he filed suit for, among other things, "aggravation of lumbar fusion." In a deposition Mr. Arceneaux gave in that lawsuit, he stated, "Jumping in the car aggravated things. That had pretty much stopped, you know, bothering me. It recreated something I thought went away, and today it seems worse." His deposition in that case further revealed:

> Q. Were your injuries from the Players incident, had those resolved prior to your accident of October of '97?
>
> A. Yes, sir, they had pretty much resolved.

---

[17]*Boykin v. Louisiana Transit Co.*, 96-1932 (La. 3/4/98), 707 So.2d 1225.

[18]*Perkins v. Entergy Corp.,* 00-1372 (La. 3/23/01), 782 So.2d 606.

Mr. Arceneaux also admitted to receiving injuries in a motorcycle accident in December of 1999 and to two altercations with the police in which he claimed injuries.

Dr. Jackson did not operate on Mr. Arceneaux for his fractured fusion until August of 2000.

Accordingly, we find a reasonable basis for the jury to have determined that Mr. Arceneaux did not prove the breach of duty and/or causation elements of his claim. There is no manifest error in its determination.

**ISSUES NOT PRESENTED TO JURY**

Lastly, Mr. Arceneaux raises several arguments, such as spoliation, false imprisonment, and malicious prosecution, which he did not raise before the jury but raised, for the first time, at the hearing on his motions for a new hearing and JNOV. Concerning the spoliation claim, he did present evidence to the jury regarding an alleged videotape of the incident and questioned Players' employees about it. Thus, even though Mr. Arceneaux did not file a separate spoliation claim, the jury was free to consider this evidence and testimony in its credibility determinations and in its overall evaluation of the evidence. We agree with the trial court that these issues should have been raised during the trial and none of his arguments, concerning them, convince us that the jury's verdict resulted in a miscarriage of justice.

**CONCLUSION**

We find no error in the jury's verdict or in the trial court's denial of Mr. Arceneaux's motions for a new trial and JNOV. Thus, we affirm its judgment and cast the costs of this appeal on him.

**AFFIRMED.**

10