WELCH, J.
LThe State of Louisiana, through the Department of Transportation and Development (DOTD), appeals a judgment notwithstanding the verdict (JNOV) that increased the wrongful death damages awarded by the jury to three of the six plaintiffs. We reverse the JNOV and reinstate the jury’s verdict as to two of those plaintiffs, and we affirm the JNOV as to one plaintiff, but amend the amount of damages awarded.
FACTUAL AND PROCEDURAL HISTORY
On Sunday, May 10, 2009, Noha Salama arrived in Louisiana, having traveled from her home in Israel to visit family. Her nephew, Mohamed Abu-Jaber, picked her up at the airport in New Orleans, and the two proceeded toward Baton Rouge on Interstate 10, with Mrs. Salama riding as the front seat passenger in her nephew’s vehicle. The vehicle exited the interstate at Louisiana Highway 44/Burnside Drive in Gonzales and stopped at the stop sign at the end of the exit ramp. Intending to reenter the interstate, the vehicle proceeded straight across the four-lane highway without stopping in the median that divided the two northbound lanes from the two southbound lanes. After crossing the northbound lanes and median, the vehicle was broadsided by two southbound vehicles. Mrs. Salama died at the scene of the accident.
Mrs. Salama’s surviving husband, Abdul Hamid Salama, and five children, Hani, Ruan, Reem, Rami, and Nadin, instituted the instant wrongful death and survival action against her nephew and his insurer, the drivers of the two southbound vehicles and their insurers, and DOTD. The family settled its claims against all other parties and their insurers and proceeded to a jury *399 trial against DOTD. At trial, the family argued that DOTD, which had care, custody, and control of the intersection, was at fault for treating the exit and entrance ramps and Highway 44 as a single intersection, rather than two separate intersections, and for |sfailing to install a stop or yield sign in the median of Highway 44. The jury found DOTD 18% at fault in causing the accident and Mrs. Salama’s nephew 82% at fault. The jury awarded wrongful death damages in the amount of $300,000.00 to Mr. Salama and $150,000.00 to each of the five children. The jury awarded no survival damages. The trial court entered judgment in accordance with the jury’s verdict.
The family filed a motion for JNOV, arguing that both the percentage of fault assessed to DOTD and the amount of damages awarded to each plaintiff were insufficient. After a hearing, the trial court took the matter under advisement, and then it subsequently issued written reasons denying the motion as to the fault assessed to DOTD, and denying the motion as to the damages awarded to three of the children, Rami, Reem, and Ruan. However, the trial court granted the motion as to the damages awarded to Mr. Salama, increasing those damages from $300,000.00 to $400,000.00, and as to the damages awarded to two of the children, increasing the damages awarded to Nadin from $150,000.00 to $350,000.00, and the damages awarded to Hani from $150,000.00 to $300,000.00. The trial court signed a judgment on August 3, 2015 reflecting the JNOV and increased awards, and it is from this judgment that DOTD has appealed.
LAW AND DISCUSSION
A JNOV is a procedural device authorized by La. C.C.P. art. 1811, by which the trial court may correct an erroneous jury verdict by modifying the jury’s finding of fault or damages, or both. Bourg v. Cajun Cutters, Inc., 2014-0210 (La.App. 1st Cir. 5/7/15), 174 So.3d 56, 61, writs denied, 2015-1306 (La. 4/4/16), 190 So.3d 1201 and 2015-1253 (La. 4/4/16), 190 So.3d 1205. The standard for granting a JNOV is rigorous because “[w]hen there is a jury, the jury is the trier of fact.” Joseph v. Broussard Rice Mill, Inc., 2000-0628 (La. 10/30/00), 772 So.2d 94, 99, quoting Scott v. Hospital Service District No. 1, 496 So.2d 270, 273 (La. 1986). A JNOV is allowable only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not reach different conclusions. Falcon v. Louisiana Department of Transportation, 2013-1404 (La.App. 1st Cir. 12/19/14), 168 So.3d 476, 488, writ denied, 2015-0133 (La. 4/10/15), 163 So.3d 813. It is not enough that there is a preponderance of evidence for the mover. Smith v. State, Department of Transportation & Development, 2004-1317 (La. 3/11/05), 899 So.2d 516, 525. If there is evidence opposed to the motion that is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, a JNOV is not warranted. Id. In making its decision the court should not evaluate the witnesses’ credibility and should resolve all reasonable inferences or factual questions in favor of the non-moving party. Joseph, 772 So.2d at 99.
When a JNOV is granted on the issue of quantum because the trial court concludes reasonable men could not disagree on the fact that the award is abusively high or low, the trial court must next determine the proper amount of damages to be awarded. Falcon, 168 So.3d at 488. The trial court is not constrained as courts of appeal are to raising or lowering the award to the lowest or highest point *400 that is reasonably within the discretion afforded the court. Hanchett v. State, ex rel. Department of Transportation and Development, 2006-1678 (La.App. 1st Cir. 11/7/07), 977 So.2d 78, 84. Rather, after granting a JNOV on the damage award, the trial court replaces the jury as the trier of fact and makes an independent assessment of the damages and awards what it determines to be the proper amount of compensation under the facts of the case. Falcon, 168 So.3d at 488; Hanchett, 977 So.2d at 85.
An appellate court reviewing a trial court’s grant of a JNOV employs the same criteria used by the trial court in deciding whether to grant the motion. Hanchett, 977 So.2d at 85. Thus, when the JNOV is granted on the issue of | ^quantum, the appellate court first considers whether reasonable minds could differ as to the fact that the jury award was abusively high or low. See Falcon, 168 So.3d at 488. If the appellate court finds that reasonable minds could differ, then the trial court erred in granting the JNOV and the jury verdict should be reinstated. Id. If the appellate court determines that the JNOV was properly granted, the trial court’s independent assessment of damages is then reviewed for an abuse of discretion. Hanchett, 977 So.2d at 85.
Our initial inquiry, then, is whether the JNOV was properly granted because reasonable persons could not disagree that the jury’s awards for wrongful death damages to Mr. Salama and the two children, Hani and Nadin, were abusively low. See Falcon, 168 So.3d at 488. In conducting our review, we are mindful that neither the trial court nor this court may substitute its evaluation of the proper amount of damages for that of the jury unless the jury’s awards totally offend reasonable inferences from the evidence. Pitts v. Louisiana Medical Mutual Insurance Co., 2015-0848 (La.App. 1st Cir. 6/3/16), 197 So.3d 221, 226.
While it is impossible to place a monetary value on the life of a person, our jurisprudential system has established that a monetary award is the appropriate remedy to one who has suffered the loss of a loved one as a result of the fault of another. Moss v. State, 2007-1686 (La.App. 1st Cir. 8/8/08), 993 So.2d 687, 704, writ denied, 2008-2166 (La. 11/14/08), 996 So.2d 1092. Wrongful death damages are meant to compensate the designated survivors for their loss of the decedent. See La. C.C. art. 2315.2. The elements of the award include loss of love, affection, companionship, and support, as well as funeral expenses. Maldonado v. Kiewit Louisiana Co., 2012-1868 (La.App. 1st Cir. 5/30/14), 152 So.3d 909, 938, writ denied, 2014-2246 (La. 1/16/15), 157 So.3d 1129.
Mrs. Salama was forty-eight years old when she died. She and Mr. Salama had been married for twenty-nine years and had five children. Their oldest son, |fiBami, was twenty-nine when Mrs. Salama died, and had lived in the family home until he married, a few weeks prior to her death. Their son Hani was twenty-seven, was not married and lived at home. As a child Hani was diagnosed with diabetes, and his mother had always been involved caring for his health. Their twenty-six-year-old daughter, Reem, also lived at home, was studying English education, and was working. Their daughter, Ruan, was twenty-one and had moved away from home to attend school approximately six months prior to Mrs. Salama’s death. The youngest child, Nadin, turned sixteen on the day her mother died. At trial, Mr. Salama and each of the five children testified about their love for Mrs. Salama, the special relationships they shared with her, and the impact *401 her loss has had on their family.[1]
Mr. Salama described his wife as an “incredible” and “wonderful” woman. He testified that he loved his wife very much and described their relationship as “incredible,” claiming that other couples were envious of them. He stated that he missed her very much, and that he had not remarried and could not touch another woman. He explained, “I have woken up from all of this about a year or ago [sic]. For three or four years I had to only understand the thing that was going on there. I don’t have until today a partner.”
The children described the difficult time their father had after their mother’s death. Ruan testified that her father “gave up on everything,” including his children, and did not do anything. She described her father as “depressed” and stated that he does not talk to anyone. Reem indicated that her father had difficulty continuing working and was still not working. Reem explained that her “father stopped caring about life.” Ruan stated that at one point she returned from school |7to find no food or electricity at the house. Nadin testified that her mother was “everything for” her father and that her mother’s death “ruined” him.
The children also described how their close-knit family drifted apart after their mother died. Hani described his mother as “the connector of the family,” and Rami described her as “the glue that held everyone together.” Ruan testified that after their mother died, “We fell apart completely... Everyone is by himself trying to survive.” Reem testified that she was expected to take her mother’s place in the household, and tried for a year to do things such as cooking and cleaning, but could not do it and moved out of the house. She returned for a time, but in 2012, she and her sisters moved to another city in Israel, where they continue to struggle. Rami described his relationship with his sisters as being “not like I would want them [sic] to be,” and opined that the relationship would be better if his mother was alive. Nadin testified, “She held it all. She did [sic] the connection between us.”
Both Nadin and Hani testified that they experienced health problems after their mother died. Nadin testified that she had recently been diagnosed with cancer, had undergone one surgical procedure, and needed another. Nadin testified that if she were alive, her mother would have been a help to her. Nadin also testified that she believed she would not have cancer if her mother were alive. Hani testified that his diabetic condition deteriorated, requiring that one of his legs be amputated. Like Nadin, he testified that if his mother were alive she would be able to help him with his condition and speculated, “I would never come into this situation without her lost.” Hani continued to live at home with his father, explaining that his father had to care for him because he could not care for himself.
Mr. Salama confirmed that Mrs. Salama was important to him and his children and that Mrs. Salama “is really missed in the house,” explaining that she “took care of everything” and that he “[did not] know how to do anything.” Mr. Salama testified that after his wife’s death, the children “couldn’t last. After they |ssaw the body in the living room, they couldn’t keep living in that house, they all moved out.” He also confirmed that his family had drifted apart “in a large scale.” He noted that Mrs. Salama’s death was hard for everyone. When asked about his work history, Mr. Salama indicated he was no longer in the same business because “everything col *402 lapsed.” In response to being questioned whether he stopped working after he learned of his wife’s death, he responded, “It’s not exactly like that. The situation that happened to me with a child and that, and the combination of the stuff.” Mr. Salama clarified that he was referring to Hani losing his leg, which required a lengthy hospitalization.
The trial court’s written reasons state that it granted the JNOV as to the wrongful death damages awarded to Mr. Salama because:
reasonable persons could not disagree that the $300,000 in wrongful death damages awarded by the jury was abusively low based on the nature of the relationship between the plaintiff and his wife. Mr. Salama was married to the deceased for almost thirty (30) years at the time of her death and the testimony established that they had a uniquely close and loving relationship. The couple had five (5) children together, all of whom lived in the family home within six (6) months of the fatal accident. Mr. Salama has not remarried to this day, and he has been unable to be with another woman during the six (6) years since his wife’s death. His children testified that their mother’s death ruined him, and he stopped caring about life after the accident. The family split apart after the accident and Mr. Salama lost his businesses, which ultimately resulted in the utilities being turned off at the family home. Based on the length of the relationship, the age of the spouses at the time of [Mrs.] Salama’s death, the uniquely close and loving relationship, and the devastating effects [Mrs.] Sala-ma’s death had on Mr. Salama, the wrongful death award is raised to $400,000.00 based on a de novo review of damages.
After thorough review, we find that the jury’s award does not totally offend reasonable inferences from the evidence, and therefore conclude that the trial court improperly substituted its own judgment for that of the jury. Mr. Salama unquestionably loves and misses his wife of twenty-nine years. However, we cannot conclude that no reasonable person could find an award of $300,000.00 to Mr. Salama to be appropriate. Because reasonable and fair-minded persons in the |aexercise of impartial judgment might reach different conclusions as to whether the jury’s award is abusively low, we find that a JNOV was not warranted. Accordingly, the jury’s award to Mr. Salama must be reinstated.
The trial court also granted a JNOV as to the wrongful death damages awarded to two of Mrs. Salama’s children, Nadin and Hani. The trial court stated that the jury failed to consider Nadin’s and Hani’s claims individually, as they were awarded $150,000.00, the same amount in damages as their siblings. Under Louisiana law, amounts recoverable in a wrongful death action for loss of care, guidance, and affection of the deceased may differ among the plaintiffs on the basis of differing degrees of affection which existed between the deceased and the different plaintiffs or differing degrees of guidance needed by minor plaintiffs. Scott v. Pyles, 99-1775 (La. App. 1st Cir. 10/25/00), 770 So.2d 492, 505, writ denied, 2000-3222 (La. 1/26/01), 782 So.2d 633. In a wrongful death action brought by a child for the loss of a parent, the child may recover for loss of financial support, including all financial contributions that the decedent would have made to her dependents but for her wrongful death, as well as the monetary value of services the decedent provided and would have continued to provide but for her wrongful death. See Cavalier v. State, ex rel. Department of Transportation and Development, 2008-0561 (La.App. 1st Cir. *403 9/12/08), 994 So.2d 635, 647. These services include the nurture, training, education, and guidance a child would have received had his or her parent not been killed. Cavalier, 994 So.2d at 647-648.
Nadin lost her mother on her sixteenth birthday. She testified that she was close to her mother, explaining that she did not have friends and did not go out, and spent all of her time with her mother. They cooked, shopped, and went to the forest together. She described her mother as “the support” and “the guidance.” Since her mother’s death, Nadin testified that her life changed “180 degrees.” She | inexpressed that it was difficult to describe how hard it has been on her since her mother died, stating, “Relationship got ruined to lose her and to reestablish myself in a life without her to build a new life.” Nadin also expressed that now she cannot celebrate her birthday because now the anniversary of her mother’s death is “the saddest day.”
Nadin described how her home life changed after her mother’s death, stating, “Everything fell apart after she died.” She testified that her family was not able to “connect” without her mother, and there was fighting amongst them. She testified that her mother’s death distanced her from her father, then got her closer, “then later on the connection just went, and we are less meaningful and less meaningful.” Nadin testified that she moved out of the family home when she was twenty because the situation there was “very bad,” referencing the water and electricity in the house being disconnected after her father did not pay the bills. Reem testified that that the sisters moved out of the family home and live together in another city. Nadin testified that she works in a kindergarten guiding autistic children.
Nadin also testified that she recently discovered that she has cancer, for which she has had one operation and requires another, as well as radiation treatments. Nadin testified that she missed her mother and that her mother would have helped her deal with cancer. Nadin also testified that she thought “that [she] wouldn’t have cancer if [her mother] would have been here.”
Hani was twenty-seven years old when his mother died and also lived at home. Hani’s sisters, Reem and Ruan, testified that Hani took his mother’s death very hard. Hani is diabetic and testified that his mother was always involved in his life and his health. He considered his mother to be his best friend and counselor and relied on her “[f|or everything.” He explained that they talked daily, that he | n“never talked to any friends,” and that there was no one closer to him than his mother.
Hani testified that prior to Mrs. Sala-ma’s death, they had “the perfect house.” Hani described the family home after her death as “empty” and “too messy.” He stated that his sisters moved away and that he still lives in the house with his father, explaining that though it is a three-story house, he lives in the living room because he cannot get to the upper floors after having his leg amputated. He testified that he does not leave the house and does not have contact with or talk to anyone now.
Hani’s diabetic condition worsened after his mother’s death, though he indicated that he continued taking his medication, without which he would collapse. He explained that his condition jumped from a “[seven] and a half, [eight] ... to [eleven] ... to [fourteen]” and he had to be hospitalized. He testified that his leg had to be amputated approximately eighteen months prior to his testimony. Hani stated that he continues to live at home with his father because, “I can’t take care of myself. He has to take care of me. I can’t take care of myself.” Hani indicated that if she were alive his mother would have been able to *404 help with his worsening condition and recovery, speculating, “I would never come into this situation without her lost.”
After thorough review, we find the trial court did not err in granting the JNOV as to the minor child Nadin. The jury erred in awarding Nadin, the youngest of the decedent’s children and the only minor at the time of her mother’s death, the same wrongful death damages as her sisters and brothers. Considering that Na-din was a minor living at home with her mother and father, that she had an exceptionally close and loving relationship with her mother, and that her mother’s death on her birthday would have a life-long impact on her, reasonable minds could not disagree that the jury’s $150,000.00 damages award was abusively low. See Hanchett, 977 So.2d at 84. However, we find that the trial court abused its discretion in awarding Nadin in $350,000.00. Under the circumstances of this case, we conclude that the highest award reasonably within the discretion of the trial court is $250,000.00. See Maldonado, 152 So.3d at 939 (seven and three year old boys were awarded $450,000.00 for the wrongful death of their father); Moss v. State, 993 So.2d at 705-707 (high school senior awarded $100,000.00 for the wrongful death of his father); Ratliff v. State, ex rel Department of Transportation and Development, 2002-0733 (La.App. 1st Cir. 3/28/03), 844 So.2d 926, 939, writ denied, 2003-1739 (La. 10/10/03), 855 So.2d 350 (two minor children aged fifteen and older awarded $125,000.00 each for the wrongful death of their mother); and Scott, 770 So.2d at 504-505 (thirteen and ten year old girls were awarded $500,000.00 and $400,000.00, respectively, for the wrongful death of their father).
As to Hani, who was an adult at the time of his mother’s death, we find that reasonable minds could disagree that the jury’s award of damages of $150,000.00 was abusively low. The record establishes that Mrs. Salama had a close and loving relationship with each of her children and that each of them feels her loss acutely as they face the challenges of life without their mother. Rami now has a young son who will never know his grandmother. Reem testified that she had a normal life and plans for her future but after her mother’s death has “nothing” and “feel[s] like an orphan” from whom everything has been taken. Ruan also testified that since her mother’s death her “life has changed [one hundred eighty] degrees.” Ruan explained that she became depressed, stopped going to school, and could not hold a job, although she had recently begun working as “a guide in a rehabilitation center.” Considering the testimony adduced, a reasonable person could have concluded that even though Hani experienced health issues, he should be compensated for the loss of his mother by an award equal to that of his three |1ssiblings who were also adults when their mother died. Therefore, as to Hani, we conclude that the trial court erred in granting the JNOV and the jury’s award must be reinstated.
CONCLUSION
For the foregoing reasons, the August 3, 2015 judgment is reversed in part and affirmed in part. That part of the trial court’s August 3, 2015 judgment granting a JNOV as to Nadin Salama is affirmed but the judgment is amended to lower the damages award to $250,000.00. That part of the trial court’s judgment granting a JNOV and increasing the damages awarded to Abdul Hamid Salama and Hani Sala-ma is reversed, and as to Abdul Hamid Salama and Hani Salama, the trial court’s June 1,2015 judgment rendered in accordance with the jury’s verdict is reinstated. Costs of this appeal in the amount of $19,549.70 are assessed equally between the plaintiffs, Abdul Hamid Salama, Rami Salama, Hani Salama, Reem Salama, Ruan *405 Salama, and Nadin Salama and the defendant, the State of Louisiana, through the Department of Transportation and Development.
AUGUST 3, 2015 JUDGMENT REVERSED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED; JUNE 1, 2015 JUDGMENT REINSTATED IN PART.
Crain, J., agrees in part, dissents in part and assigns reasons.
Theriot, J., agrees in part, dissents in part for reasons assigned by J. Crain.

. All of the family members testified by video deposition through an interpreter, explaining that they were unable to travel from their homes in Israel to attend the trial.