| | | |
|---|---|---|
| **BRETT LIRETTE** | * | **NO. 2023-CA-0527** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **JASON C. ADAMS, STATE** | * | |
| **FARM MUTUAL** | | **FOURTH CIRCUIT** |
| **AUTOMOBILE INSURANCE** | * | |
| **COMPANY, GEICO** | | **STATE OF LOUISIANA** |
| **CASUALTY COMPANY &** | * * * * * * * | |
| **AXIS VENTURES, LLC** | | |

| | |
|---|---|
| <u>**CONSOLIDATED WITH:**</u> | <u>**CONSOLIDATED WITH:**</u> |
| **BRETT LIRETTE** | **NO. 2023-CA-0546** |
| **VERSUS** | |
| **JASON C. ADAMS, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, GEICO CASUALTY COMPANY & AXIS VENTURES** | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-05383, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Paula A. Brown, Judge Nakisha Ervin-Knott)

Steven A. DeBosier
James H. Peltier, Jr.
Adras Paul LaBorde III
DUDLEY DEBOSIER INJURY LAWYERS
112 Founders Drive
Suite 101
Baton Rouge, LA 70810


COUNSEL FOR PLAINTIFF/APPELLANT


Jeffrey Edward Richardson
ADAMS AND REESE LLP

701 Poydras Street
Suite 4500
New Orleans, LA 70139

Gordon P. Guthrie, III
PORTEOUS, HAINKEL & JOHNSON, LLP
704 Carondelet Street
New Orleans, LA 70130

Joseph M. Messina
Bradley S. Groce
LOBMAN CARNAHAN BATT ANGELLE & NADER
400 Poydras Street
Suite 2300
New Orleans, LA 70130

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED IN PART**
**REVERSED IN PART**
**REMANDED**

**JULY 10, 2024**

PAB
DLD
NEK

This is a civil action. The underlying suit for wrongful death and survival damages emanates from a single-car accident, in which the driver, Jason C. Adams ("Mr. Adams"), was excessively speeding while intoxicated, and in which the passenger, Kristi Lirette, was lamentably killed. That suit gave rise to five appeals now pending before this Court. Plaintiffs Brett Lirette ("Mr. Lirette") and Diana King ("Ms. King"), the parents of Kristi Lirette (collectively, "the Parents"), filed three separate appeals that were consolidated with two separate appeals filed by the defendant, Mr. Adams.[1] After consideration, this Court deconsolidated the Parents' appeals from Mr. Adams'; therefore, this opinion will address only Mr. Adams' requests for review, while the concerns raised by the Parents will be examined in a separate opinion.[2]

For the reasons that follow, we dismiss the appeal found in Case No. 2023-CA-0546; we affirm that portion of the district court's June 16, 2022 judgment that found Mr. Adams liable for wrongful death, survival and exemplary damages; we

---

[1] The Parents' appeals were lodged with this Court under case Nos. 2023-CA-0377, 2023-CA-0382 and 2023-CA-0528; Mr. Adams' appeals were lodged with this Court under case Nos. 2023-CA-0527 and 2023-CA-0546.

[2] We will, however, utilize the entire record in all five appeals to reach our conclusions in each opinion. We will also consider the record found in the prior appeals in this case, 2022-CA-0552 c/w 2022-CA-0553, pursuant to Uniform Rules—Courts of Appeal, 2-1.14.

1

affirm that portion of the district court's June 16, 2022 judgment, which dismissed with prejudice State Farm as a liability insurer under State Farm Policy Number 282-7788-D17-18B; we affirm the district court's exclusion of *Defendant's Requested Special Jury Charge No. 15*; we affirm the district court's April 28, 2023 denial of Mr. Adams' motion for new trial on the grounds that GEICO did not participate in the trial; we dismiss the answer to this appeal as moot; and we reverse the district court's April 28, 2023 denial of Mr. Adams' motion for JNOV and remand this matter to the district court for the purpose of conducting an independent assessment of the wrongful death, survival and punitive damages awards.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In a prior opinion regarding the same parties, this Court in *Lirette v. Adams* ("*Lirette I*") laid out many of the same facts which are pertinent to our review in the case *sub judice*. 22-0552 (La. App. 4 Cir. 1/31/23), 382 So.3d 122. "On May 4, 2016, Kristi Lirette was a passenger in a [black] 2015 Lamborghini Huracan driven by Mr. Adams." *Id.* at p. 2, 382 So.3d at 125. "The vehicle collided with a flood wall on Tchoupitoulas Street in New Orleans, and Kristi Lirette died from the injuries she sustained in the accident." *Id.*

"At the time of the subject accident, Mr. Adams and his business partner, Dr. Alireza Sadeghi ("Dr. Sadeghi"), each leased a [black] 2015 Lamborghini Huracan [together] with their business, Axis Ventures, LLC ("Axis"). *Id.* "Only after the accident did Mr. Adams realize that he was inadvertently driving the vehicle leased to Dr. Sadeghi and Axis ("Lamborghini [A]"), and not the vehicle leased to him and Axis ("Lamborghini [B]")." *Id.* (second alteration in original)

2

Mr. Lirette filed a petition for damages on May 27, 2016, in which he named Mr. Adams, GEICO Casualty Company ("GEICO"), State Farm, and Axis as defendants.[3] Germane to our review, "Mr. Lirette alleged, in pertinent part, that an insurance policy issued by GEICO ("GEICO Policy") was in full force and effect at the time of the subject accident and rendered GEICO jointly and solidarily liable for the damages caused by Mr. Adams." *Id.* "Additionally, Mr. Lirette [alleged] that two insurance policies issued by State Farm were in full force and effect at the time of the subject accident and rendered State Farm jointly and solidarily liable for the damages caused by Mr. Adams." *Id.* These two policies were: State Farm Policy Number 286-8850-F23-18A ("State Farm Policy A"), with named insureds Dr. Sadeghi and Axis for the use of Lamborghini A; and State Farm Policy Number 282-7788-D17-18B ("State Farm Policy B"), with named insureds Mr. Adams and Axis for the use of Lamborghini B.

After answering the petition and conducting some limited discovery, State Farm filed a motion for summary judgment on October 26, 2017, seeking to be dismissed as liability insurer for Mr. Adams' collision under State Farm Policy B. Shortly thereafter, on November 16, 2017, GEICO filed its own motion for summary judgment, arguing that, while it did have a policy affording coverage to Mr. Adams at the time of the collision, that policy was for two of Mr. Adams' personal vehicles—a 2015 Chevy Tahoe and a 2016 Land Rover/Range Rover—and that Lamborghini A did not qualify as a "non-owned auto" or a "temporary substitute auto" under the GEICO policy; thus, no coverage was provided to Mr. Adams under that policy for the collision involving Lamborghini A.

---

[3] Mr. Lirette was the only named plaintiff in the original petition. He filed a first supplemental and amending petition on January 13, 2017, to add Diana King as a plaintiff in her capacity as mother and an heir of Kristi Lirette.

The motions came for hearing on December 15, 2017, at which time the district court decided to allow additional discovery before ruling on the motions. Sometime later, on December 10, 2021, GEICO re-urged its motion for summary judgment. Similarly, on January 5, 2022, State Farm also re-urged its previously filed motion for summary judgment. Another hearing was conducted for these and several other pending motions on April 1, 2022. The district court issued its judgment on June 16, 2022, in which all of the Parents' claims against GEICO were dismissed with prejudice. In the same judgment, the district court also dismissed with prejudice any of the Parents' claims pertaining to State Farm's liability for Mr. Adams' accident under State Farm Policy B. State Farm conceded that there was coverage for the accident under State Farm Policy A.

Separately, both Mr. Adams and the Parents devolutively appealed the June 16, 2022 judgment to this Court, which was the subject of *Lirette I*. We then granted GEICO's unopposed motion to consolidate the two appeals, but explained that because of the dissimilar procedural posture of the issues presented, we would review them separately.[4] After review, we found that the portion of the judgment dismissing with prejudice State Farm's liability under Policy B was interlocutory and non-appealable because it did not dismiss all claims against State Farm that were still pending related to Policy A. More notably, we determined that there was a genuine issue of material fact whether Lamborghini A did, in fact, qualify as a "non-owned auto" under the terms of the GEICO policy. As a result, we reversed the portion of the district court's June 16, 2022 judgment that granted GEICO's

---

[4] While the consolidated appeals were pending, on August 15, 2022, GEICO filed a motion to stay or limit the trial, which was originally scheduled to commence on August 29, 2022. The district court denied the motion following a telephone conference on August 16, 2022.

4

motion for summary judgment and dismissed the Parents' claims against GEICO with prejudice, and remanded the matter back to the district court. We published our opinion in *Lirette I* on January 31, 2023.

Precisely three months earlier, the Parents' suit for damages came for jury trial on October 31, 2022, and concluded on November 7, 2022, with a jury verdict in favor of the Parents and against Mr. Adams and State Farm. Because GEICO had been dismissed as a defendant in the June 16, 2022 judgment, it made only a limited appearance and did not meaningfully participate in the trial.[5] The district court adopted the jury's liability findings and damage awards in its February 27, 2023 judgment, which cast Mr. Adams in judgment for the following amounts:

(1) $12,000,000.00 in wrongful death damages to Brett Lirette;
(2) $12,000,000.00 in wrongful death damages to Diana King;
(3) $2,000,000.00 in survival damages of Kristi Lirette; and
(4) $25,000,000.00 in punitive damages against Mr. Adams.

Additionally, State Farm was cast in judgment for $250,000.00—the limits of its coverage provided under State Farm Policy A. On March 8, 2023, Mr. Adams filed a *Motion for Judgment Notwithstanding the Verdict, Remittitur,*[6] *or in the alternative, Motion for New Trial* ("motion for JNOV and motion for new trial") which, after a hearing on April 28, 2023, the district court denied. This appeal followed. The Parents filed an answer to Mr. Adams' appeal, in which they asked

---

[5] Counsel for GEICO made an appearance on day two of the trial, requesting to make a statement regarding the parties' intent to offer into evidence the GEICO policy issued to Mr. Adams. It does not appear that any statement was actually made. Counsel for GEICO also made a limited appearance at the April 28, 2023 hearing on Mr. Adams' motion for JNOV and motion for new trial. At that hearing, GEICO's counsel sought to offer an alternative scenario for the record of the events surrounding its exclusion from participating in the trial.

[6] Black's Law Dictionary (11th ed. 2019) defines remittitur as: 1. An order awarding a new trial, or a damages amount lower than that awarded by the jury, and requiring the plaintiff to choose between those alternatives <the defendant sought a remittitur of the $100 million judgment>. 2. The process by which a court requires either that the case be retried, or that the damages awarded by the jury be reduced.

this Court to increase the jury awards for wrongful death, survival and punitive damages. We will consider their request following our discussion of the merits of Mr. Adams' appeal.

## DISCUSSION

*Jurisdiction*

As an intermediate court exercising appellate review of lower courts' decisions, we routinely begin by examining whether we have the jurisdictional grounds to do so. *See Breston v. DH Catering, LLC* ("Before considering the merits of any appeal, an appellate court has 'the duty to determine *sua sponte* whether [proper] jurisdiction exists, even when the parties do not raise the issue.'") 23-0460, p. 13 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 962 (quoting *Succession of Hickman*, 22-0730, p. 5 (La. App. 4 Cir. 3/15/23), 359 So.3d 584, 589) (alteration in original).

Preliminarily, we are faced with a somewhat novel situation. As we noted above, the matter now before us concerns two consolidated appeals, Case Nos. 2023-CA-0527 and 2023-CA-0546 — both filed by Mr. Adams. The chronology of these appeals unfolded as follows: On June 5, 2023, Mr. Adams filed a motion for devolutive appeal from the final judgment dated February 27, 2023, the prior interlocutory judgment in favor of State Farm rendered on June 16, 2022, and the denial of his motion for JNOV and motion for new trial. The district court signed an order of appeal on June 12, 2023. That motion and order resulted in the appeal lodged with this Court as Case No. 2023-CA-0527.

Following, on July 13, 2023, Mr. Adams filed another motion for devolutive appeal citing the same grievances presented in Case No. 2023-CA-0527. This motion was based on the pretext that the second appeal was filed out of an

6

abundance of caution in order to clarify the issues that he is petitioning this Court to review. In fact, Mr. Adams explicitly confirmed in this second motion and order for devolutive appeal that the issues being appealed are duplicative of those outlined in the motion and order of appeal filed on June 5, 2023. Nevertheless, on July 14, 2023, the district court granted another order of appeal, which is now lodged with this Court as Case No. 2023-CA-0546.[7]

Louisiana Code of Civil Procedure Article 2088 is express in its directives. It instructs that once a district court has signed an order of appeal, that court no longer retains jurisdiction over any issues that are reviewable on appeal. There are some enumerated exceptions to that directive, none of which are pertinent to the circumstances presented here. Specifically, La. C.C.P. art. 2088(A) provides, in relevant part:

> The jurisdiction of the [district] court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal . . . in the case of a devolutive appeal. Thereafter, the [district] court has jurisdiction in the case only over those matters not reviewable under the appeal . . . .

Consequently, in this instance, the district court was without jurisdiction to grant a second motion for devolutive of appeal from the same judgment and rulings that it had previously granted. We find the order of appeal that was granted on July 14, 2023, is without effect and is improperly before this Court. Accordingly, Case No. 2023-CA-0546 is dismissed.

Next, we note that neither the denial of a motion for JNOV nor the denial of a motion for a new trial are final appealable judgments; rather, they are interlocutory judgments. *See Succession of Hickman* ("[T]he denial of a motion

---

[7] In his accompanying appellant brief, Mr. Adams again acknowledges that the issues posed in Case No. 2023-CA-0546 are identical to those presented in Case No. 2023-CA-0527.

for [a] new trial is not a final, appealable judgment.") 22-0730, p. 6 (La. App. 4 Cir. 3/15/23), 359 So.3d 584, 590 (quoting *New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans*, 17-0320, p. 5 (La. App. 4 Cir. 3/21/18), 242 So.3d 682, 688, n.12); *see also Barnett v. Woodburn* ("[T]he denial of a motion for JNOV is an interlocutory and non-appealable judgment.") 20-0675, p. 17 (La. App. 1 Cir. 4/16/21), 324 So.3d 641, 653, n.2 (citing La. C.C.P. art. 1914(C)).

Likewise, Mr. Adams seeks to appeal the June 16, 2022 judgment, which granted State Farm's motion for summary judgment, dismissing with prejudice any of the Parents' claims pertaining to State Farm's liability for Mr. Adams' accident under State Farm Policy B. In *Lirette I*, we found this judgment to be interlocutory in nature and, therefore, not a final appealable judgment.

"However, an appellate court may consider interlocutory judgments . . . as part of an unrestricted appeal from a final judgment." *Precept Credit Opportunities Fund, LP v. Dave*, 23-0104, p. 9 (La. App. 4 Cir. 10/3/23), 376 So.3d 210, 218 (quoting *Everett v. Air Products & Chemicals, Inc.*, 22-0539, p. 3 (La. App. 4 Cir. 5/2/23), 382 So.3d 216, 222-23). Therefore, because the trial judgment rendered on February 27, 2023, is a final appealable judgment without any restrictions for appellate review, we will consider these interlocutory rulings together with our examination of that judgment. We now turn to the merits of Mr. Adams' appeal.

Mr. Adams presents this Court with eight assignments of error, which we summarize as follows:

(1) The district court erred in finding that survival damages were proven;

(2) The district court erred when it did not use Mr. Adams' proposed jury charge no. 15;

(3) The district court erred when it failed to grant either Mr. Adams' motion for JNOV or his motion for a new trial based on the excessive damage awards

8

of: (a) $12,000,000 for each plaintiff for wrongful death, (b) $2,000,000 for survival, and (c) $25,000,000 in punitive damages;

(4) The district court erred in failing to grant a new trial when presented with the procedural deficiencies concerning whether the GEICO policy issued to Adams provides coverage for this loss; and

(5) The district court erred when it granted summary judgment in favor of State Farm, finding that no liability existed for them under State Farm Policy B.

We have listed these assigned errors in the order we deem most efficient and will address each in turn.

***Applicable Law***

*Wrongful Death Action*

If a person dies due to the fault of another, certain delineated family members may file suit for the damages that those family members suffered as a result of the death—*i.e.*, "wrongful death" damages. La. C.C. art. 2315.2.[8] In this case, because Kristi Lirette was unmarried and had no children, the Parents are the proper party to bring such claims. La. C.C. art. 2315.2(A)(2). "The purpose of the damages is to compensate the decedent's survivors for intangible injuries resulting from their loss of future pecuniary benefits, care, maintenance, support, services, advice, and counsel from the deceased." HERMAN, RUSS M. and CAIN, JOSEPH E., LOUISIANA PERSONAL INJURY, *in* 5 LOUISIANA PRACTICE SERIES § 194 (September 2023 Update). "The elements used to assess wrongful death awards include 'loss of love and affection [(consortium)], loss of services, and loss of support.'" *Lege v. Union Carbide Corp.*, 20-0252, p. 27 (La. App. 4 Cir. 4/1/21), 365 So.3d 617,

---

[8] Louisiana Civil Code article 2315.2 provides, in pertinent part:

> A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
>
> * * *
>
> (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.

637. "The compensable elements of damage in loss of consortium are loss of society, sex, service, and support." HERMAN, at § 5:194. "Society is broader than the loss of sexual relations. It includes general love, companionship, and affection that [a claimant] loses as a result of the injury." *Id*.

*Survival Action*

"[A] survival action is a separate and distinct cause of action from a wrongful death action, as the survival action 'permits recovery only for the damages suffered by the victim from the time of injury to the moment of death.'" *Minot obo Minot v. Waffle House, Inc.*, 20-0444, p. 5 (La. App. 4 Cir. 10/2/20), 365 So.3d 709, 713 (quoting *Gibbs v. Magnolia Living Ctr., Inc.*, 38,184, p. 5 (La. App. 2 Cir. 4/7/04), 870 So.2d 1111, 1115). "The action is based upon the victim's right to recovery being transferred by operation of law to the beneficiary." *Id*. Under Louisiana law, the right to survival actions is codified in La. C.C. art. 2315.1, which provides, in pertinent part:

> A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
>
> * * *
>
> (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.

"For a survival action, the elements of damages are the deceased's 'pain and suffering, loss of earnings, fright, fear or mental anguish while the ordeal is in progress.'" *Subervielle v. State Farm Mut. Auto. Ins. Co.*, 08-0491, p. 5 (La. App. 4 Cir. 1/7/09), 32 So.3d 811, 814 (quoting *Dawson v. James Stewart and Deaton, Inc.*, 437 So.2d 974 (La. App. 4th 1983)). "A jury may award damages for pain and suffering in a survival action where there is the smallest amount of evidence of

10

pain, however brief, on the part of the deceased, based on his actions or otherwise." *Thompson v. Crawford*, 17-1400, p. 1 (La. 11/13/17), 229 So.3d 451, 452 (first citing *Leary v. State Farm Mut. Auto. Ins. Co.*, 07-1184 (La. App. 3 Cir. 3/5/08), 978 So.2d 1094, 1098; then citing *Etcher v. Neumann*, 00-2282 (La. App. 1 Cir. 12/28/01), 806 So.2d 826, 840). "Survival damages are properly awarded if there is even a scintilla of evidence of pain or suffering on the part of the decedent, and fright, fear or mental anguish during an ordeal leading to the death is compensable." *Roark v. Liberty Healthcare Sys., Inc.*, 50,632, p. 8 (La. App. 2 Cir. 5/20/16), 197 So.3d 171, 177 (citing *Simmons v. Christus Schumpert Med. Ctr.*, 45,908, p. 33 (La. App. 2d Cir. 6/15/11), 71 So.3d 407, 428).

*Punitive Damages*

Louisiana Civil Code article 2315.4 allows for exemplary, or punitive damages in the case of an intoxicated driver:

> In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.

The purpose of the "imposition of punitive damages . . . is designed to penalize those who, under the influence [of] alcohol, create a hazard by the unsafe movement or placement of their vehicle." *Elder v. Rowe*, 94-1599, p. 5 (La. App. 4 Cir. 3/29/95), 653 So.2d 718, 722. "Recovery under this statute requires proof that: (1) the defendant was intoxicated; (2) the intoxication was a cause-in-fact of the accident; and (3) that the defendant acted with a conscious indifference to the safety of others." *Hanson v. Benelli*, 97-1467, p. 19 (La. App. 4 Cir. 9/30/98), 719 So.2d 627, 638 (citing *Bourgeois v. State Farm Mut. Auto. Ins. Co.*, 562 So.2d 1177, 1180 (La. App. 4th Cir.)). "This determination rests upon the factual

findings of the district court and is reviewed under the manifest error standard."
*Id.*

With these precepts in mind, we now turn to Mr. Adams' arguments.

### *Liability for Survival Damages*[9]

Mr. Adams asserts that the Parents have failed to present any evidence that Kristi Lirette experienced any pre-impact fear. He finds it merely speculative that she was gripped by fear once the car struck the curb and went hurtling towards the flood wall because Mr. Adams has no memory of the events surrounding the collision and there were no witnesses to the incident. Alternatively, Mr. Adams avows that even if Kristi Lirette had experienced any pre-impact fear, it would have lasted for less than a second.

The Parents maintain that being a passenger in a vehicle driven by an intoxicated driver at speeds of up to 118 miles per hour on a street that has a speed limit of 30 miles per hour is enough to reasonably engender fear in anyone.[10] Further, the Parents point out that James Pittman ("Mr. Pittman"), an expert witness in accident reconstruction, testified that the Lamborghini's data recorder indicated that the vehicle was travelling at 96 miles per hour when it hit a curb and left the roadway. According to Mr. Pittman, the impact with the curb would have been enough to put one on notice that there was a potential for danger, especially in light of the fact that the vehicle was slightly airborne at that point. We find the Parents' position to be more persuasive.

---

[9] In his brief to this Court, Mr. Adams does not dispute that liability exists for him in the Parents' wrongful death action; rather, he merely objects to the quantum of the damage awards. As such, we pretermit any discussion of liability for that cause of action.

[10] At the point where the Lamborghini left the roadway, the safest suggested speed limit was posted as 25 miles per hour.

In *Reid v. State Through Dept. of Transp. And Dev.*, 637 So.2d 618 (La. App. 2 Cir. 1994), a driver who was alone encountered a series of orange barrels being used to close the lane he was travelling in. A traffic expert testified that the driver would have had about 1.6 seconds to react to the hazard. Not realizing his peril until too late, the driver belatedly applied the brakes, but crashed into a barrel before careening across the highway, where he collided with an eighteen wheeler and then ricocheted into a concrete barrier. The impact killed the driver. The *Reid* court determined that the district court had correctly inferred an instant of terror for the driver while skidding across the roadway and before impact—therefore, an award for survival damages was appropriate. *Id.* 637 So.2d at 629.

Our review of the accident-scene photos that were shown to the jury reveals that, after impacting the curb, the front passenger wheel and surrounding portions of the Lamborghini were ripped from the car while the car continued to travel across a large grassy area before crashing into the flood wall. When considered together with the testimony of Mr. Pittman, we cannot say that the jury was in error to conclude that Kristi Lirette experienced pre-impact fear and was entitled to an award for survival damages. This argument is without merit.

### *Jury Charge No. 15 and Punitive Damages*

At issue in this assignment of error is the district court's rejection of *Defendant's Requested Special Jury Charge No. 15*, which read as follows:

> Blood-alcohol test results, and guilty pleas, alone, are insufficient to prove that intoxication was a cause-in-fact of the injuries, and insufficient to obtain an award of punitive damages.

By excluding this jury charge, Mr. Adams asserts that the district court did not provide proper instructions to the jury on how to determine whether punitive damages are appropriate in this case. He maintains that throughout the trial, the

13

Parents' counsel repeatedly reminded the jury that Mr. Adams' blood-alcohol content was above the legal limit and that he had pled guilty to the crime of vehicular homicide. However, he insists, the Parents' counsel did not offer any medical evidence or testimony to prove that Mr. Adams' intoxication was a cause-in-fact of Kristi Lirette's death, a crucial element in awarding punitive damages pursuant to La. C.C. art. 2315.4. Mr. Adams claims that the Parents' sole reliance on his blood test results and guilty plea misled the jury who, without proper instruction, came to an erroneous conclusion.

The Parents counter that the jury heard the testimony of two expert witnesses, Dr. Jimmie Valentine and Mr. Pittman, who both opined that Mr. Adams' intoxication was a cause-in-fact of the accident leading to Kristi Lirette's death. Therefore, the Parents aver, the jury did not have to rely solely on Mr. Adams' blood test results and guilty plea to make their determination, and Mr. Adams was not prejudiced by the exclusion of this jury charge. We agree with the Parents.

This Court has previously determined that "[r]efusing to admit jury instructions constitutes an error of law when it is 'prejudicial' by 'materially' affecting the result and depriving 'a party of substantial rights.'" *Chaisson v. Avondale Industries, Inc.*, 05-1511, pp. 26-27 (La. App. 4 Cir. 12/20/06), 947 So.2d 171, 190 (quoting *Lam v. State Farm Mutual Auto. Ins. Co.*, 03–0180, p. 4 (La. App. 4 Cir. 4/1/05), 901 So.2d 559, 564). "By using the manifest error standard, the court presumes that the jury utilized the correct law." *Id.* at 27, 947 So.2d at 190 (citing *Rathey v. Priority EMS, Inc.*, 04-0199, p. 27 (La. App. 4 Cir. 1/12/05), 894 So.2d 438, 458).

"The appellate court will conduct a *de novo* review 'if the jury applied the incorrect law because of erroneous jury instructions' and it 'could have affected the jury's decision.'" *Id.* (quoting *Rathey* at pp. 27-28, 894 So.2d at 459). "*De novo* review is used only if the jury charges precluded 'the jury from reaching a verdict based on the law and the facts.'" *Id.* (quoting *Jones v. Liberty Mut. Ins. Co.*, 568 So.2d 1091, 1094 (La. App. 5th Cir. 1990)). "The reviewing court considers 'the circumstances of the case and the instructions as a whole, and should measure the 'gravity or degree of error.'" *Id.* (quoting *Rathey*, 04-0199, p. 28, 894 So.2d at 459). "'Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice.'" *Id.* (quoting *Nicholas v. Allstate Ins. Co.*, 99-2522, p. 8 (La. 8/31/00), 765 So.2d 1017, 1023).

Our review of the record indicates that the instructions that were given to the jury were thorough and detailed in explaining the factors which must be met under La. C.C. art. 2315.4. Considering the case and the instructions as a whole, we find that the jury was adequately instructed in order to reach a verdict awarding punitive damages based on the law and the facts, despite the absence of *Defendant's Requested Special Jury Charge No. 15*. This argument is without merit.

### *JNOV or Motion for New Trial—Excessive Damages Awards*

"The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues." La. C.C.P. art. 1811(F). "[T]he Louisiana Supreme Court [has] explained that appellate review of a [district] court's ruling on a motion for judgment notwithstanding the verdict entails a two-part test." *Gniady v. Ochsner Clinic Foundation*, 23-0215, p. 35 (La.

15

App. 4 Cir. 12/28/23), 382 So.3d 378, 400 (citing *Davis v. Wal-Mart Stores, Inc.*, 00-0445, p. 5 (La. 11/28/00), 774 So.2d 84, 89). "First, the appellate court applies the same criteria that the [district] court did in deciding whether or not to grant the motion." *Id.* "In particular, a motion for judgment notwithstanding the verdict should be granted 'when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict.'" *Id.* at pp. 35-36, 382 So.3d at 400 (quoting *Davis*, 00-0445, p. 4, 774 So.2d at 89). "However, '[t]he motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable [people] could not reach different conclusions, not merely when there is a preponderance of evidence for the mover.'" *Id.* at p. 36, 382 So.3d at 400-01. "If 'reasonable and fair-minded [people] in the exercise of impartial judgment might reach different conclusions,' then the [district] court should deny the motion." *Id.* at p. 36, 382 So.3d at 401. "In determining whether to grant a motion for judgment notwithstanding the verdict, 'the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.'" *Id.*

"Second, if the appellate court determines that the [district] court correctly applied these criteria to the jury verdict, then the appellate court reviews the [district] court's decision for manifest error." *Id.* (citing *Davis*, 00-0445, p. 5, 774 So.2d at 89). "Thus, in reviewing a [district] court's grant or denial of a motion for judgment notwithstanding the verdict, an appellate court applies the manifest error standard of review." *Id.* (citing *Darbone v. State*, 01-1196, p. 12 (La. App. 3 Cir. 2/6/02), 815 So.2d 943, 952).

16

Louisiana jurisprudence has held that "[a] JNOV is a procedural device authorized by La. C.C.P. art. 1811, by which the [district] court may correct an erroneous jury verdict by modifying the jury's finding of fault or damages, or both." *Salama v. State*, 15-1992, p. 3 (La. App. 1 Cir. 1/5/17), 211 So.3d 396, 399 (citing *Bourg v. Cajun Cutters, Inc.*, 14-0210, p. 5 (La. App. 1st Cir. 5/7/15), 174 So.3d 56, 61). Furthermore, "[w]hen a JNOV is granted on the issue of quantum . . . the [district] court *must* next determine the proper amount of damages to be awarded." *Id.* at p. 4, 211 So.3d at 399 (emphasis added) (citing *Falcon v. Louisiana Dept. of Transp.*, 13-1404, p. 15 (La. App. 1 Cir. 12/19/14), 168 So.3d 476, 488). "The [district] court is not constrained as courts of appeal are to raising or lowering the award to the lowest or highest point that is reasonably within the discretion afforded the court. *Id.* at p. 4, 211 So.3d at 399-400 (citing *Hanchett v. State, ex rel. Dept. of Transp. & Dev.*, 06-1678, p. 11 (La. App. 1st Cir. 11/7/07), 977 So.2d 78, 84). "This is because a trial judge is in a better position to make a damage assessment than an appellate court, since the trial judge hears the testimony, views the evidence and is able to evaluate witnesses' credibility." *Hanchett*, 06-1678, p. 11, 977 So.2d at 84-85. "[A]fter granting a JNOV on the damage award, the [district] court replaces the jury as the trier of fact and makes an independent assessment of the damages and awards what it determines to be the proper amount of compensation under the facts of the case." *Salama*, 15-1992, p. 4, 211 So.3d at 400 (first citing *Falcon*, 13-1404, p. 15, 168 So.3d at 488; and then citing *Hanchett*, 06-1678, p. 11, 977 So.2d at 85).

We previously noted that on April 28, 2023, the district court held a hearing on Mr. Adams' motion for JNOV or motion for new trial. At that hearing, Mr. Adams' counsel posited that JNOV was called for as to each individual award on

17

the basis that the awards were unreasonably and abusively high. While hearing argument of counsel pertaining to the wrongful death damages award, the presiding judge noted that Mr. Adams was not disputing the jury's finding of facts related to wrongful death damages, merely the amount. Counsel for Mr. Adams did not disagree with this assessment, and went on to offer that he felt the awards of $12,000,000.00 to each of the Parents was unreasonably high. The judge responded:

> I agree with you. I agree with you as to the amounts. The amounts are far beyond anything I would have expected to see. The question is at this point what can the Court do about the amounts and whether that would have to be something for the Court of Appeal to deal with to determine that the amounts are excessive and reduce them.

At the conclusion of the hearing on all of the different damages awards, when ruling from the bench the judge further explained:

> Today the Court is here to rule on the motion for JNOV, remittitur or alternatively for a motion for a new trial. And, you know, I had difficulty really reaching a decision on this because I thought the awards were exceedingly high on this. And as for a JNOV, however, the remittitur, the Court is of the opinion that the remittitur can only be granted by agreement of the parties.

> And then when it comes to the motion for a new trial, the concern the Court has is that there is no objection or argument raised as to the liability issues. The only argument that has been raised has been as to the amounts. And given those things, the Court feels that that's more the province of the Court of Appeal to determine whether or not the amounts are excessive. For that reason the Court is denying the motions for judgment notwithstanding the verdict and the motion for new trial.

We disagree with the district court's reasoning. Based upon the jurisprudence outlined above, we find the district court erred when it found the jury awards to be excessively and unreasonably high, but denied the motion for JNOV. Instead, the district court was required to make an independent assessment to

determine the proper damages award rather than defer that responsibility to this Court. This argument has merit.

### *Motion for New Trial—Procedural Deficiencies re: GEICO*

We described earlier in this opinion how GEICO was dismissed from this suit with prejudice after its motion for summary judgment was granted on June 16, 2022. On appeal, this Court found that there was still a genuine issue of material fact as to whether an automobile insurance policy issued to Mr. Adams by GEICO afforded coverage for the collision at issue here. Accordingly, we remanded the matter back to the district court to make that determination. Because we did not render our decision until three months after the trial, GEICO was not a meaningful participant in any of the proceedings.[11]

Mr. Adams argues that he was prejudiced by not being afforded a defense by GEICO at the jury trial. Furthermore, Mr. Adams points out that no decision has yet been made about whether the GEICO policy provides coverage to him for the collision. For these reasons, Mr. Adams contends that the district court was in error when it denied his motion for a new trial.

To oppose Mr. Adams' position, the Parents assert that he did not object to GEICO's absence prior to the trial and that GEICO could have participated in the trial if it had chosen to do so. Additionally, the Parents aver that Mr. Adams was afforded a more than adequate defense at trial by the same counsel representing him in this appeal. Moreover, they argue that the exact same evidence was presented to the jury regardless of whether GEICO was present. We agree with the Parents.

---

[11] See n.5, *supra.*

First, we find that counsel for Mr. Adams has been a zealous advocate on his behalf throughout the proceedings, including counsel's advocacy for those issues currently before this Court. Next, Mr. Adams has cited no law or jurisprudence to support his contention that a new trial is warranted under these circumstances. Lastly, the only matter to be decided in relation to GEICO is whether the policy issued to Mr. Adams affords coverage for the collision at issue here. As the district court highlighted, "that just would be a matter of who would pay, not the value of the claim." This argument is without merit.

### State Farm Policy B

Finally, Mr. Adams asserts that the district court erred in its June 16, 2022 judgment, which found no liability coverage for the accident under State Farm Policy B. Albeit with different arguments, the Parents join Mr. Adams in this assertion. State Farm filed a brief with this Court for the sole purpose of opposing both parties' contentions on this issue. We will address the Parents' assertions first.

As noted elsewhere in this opinion, on January 5, 2022, State Farm filed a re-urged motion for summary judgment, seeking to be dismissed as a liability insurer under State Farm Policy B, which the district court granted on June 16, 2022. In its reasons for judgment, the district court found the "*If Other Liability Coverage Applies*" provision of the policy to be dispositive of State Farm's motion for summary judgment.[12] This pertinent State Farm policy provision provides:

If Other Liability Coverage Applies:

---

[12] In its motion for summary judgment and in its brief to this Court, State Farm raises the issue of whether Lamborghini A qualified as a "non-owned" vehicle under a different policy provision in State Farm Policy B. However, we agree with the district court that the "*If Other Liability Coverage Applies*" provision of the policy is dispositive of State Farm's motion.

1) If Liability Coverage provided by this policy and one or more other Car Policies issued to you or any resident relative by the State Farm Companies apply to the same accident, then:

> a) The Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

> b) The maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

The district court reasoned that the "you" found in section 1 of this provision includes Axis in its definition. Because Mr. Adams was a managing member of Axis and Axis was a named insured on both policies, coverage was extended to him under either policy. As Axis was a named insured on both State Farm Policies A and B, section 1(a) of the Other Liability Coverage provision precluded Mr. Adams from adding the policy limits together to provide coverage for the claims against him.

The Parents make four separate arguments to this Court, challenging the district court's ruling. We will examine each in turn.

*Argument No. 1*

The Parents contend that the district court erred when it interpreted "you" to apply to Axis. Instead, according to the Parents, Louisiana jurisprudence only prohibits the stacking of insurance policies when the same individual is named on multiple policies, but that Axis did not qualify as an individual because it is a business entity. In support of this position, the Parents rely on *Cooks v. Rental Serv. Corp.*, wherein the appellate court, discussing a Supreme Court decision, reiterated: "In *Boullt v. State Farm Mutual Automobile Insurance Co.*, the Louisiana Supreme Court explained that in order for the issue of stacking to arise at all, 'the individual seeking to stack coverages must in fact be an insured as to the

particular loss under more than one policy or a single policy covering multiple vehicles.'" 04-1646, p. 3 (La. App. 3 Cir. 4/27/05), 900 So.2d 1146, 1148 (quoting *Boullt v. State Farm Mutual Automobile Insurance Co.*, 99-0942, p. 7 (La. 10/19/99), 752 So.2d 739, 743). The Parents then cite a U.S. Supreme Court Case[13] to further extrapolate that "individual," as used in *Boullt,* is synonymous with "human being" or "person." Using this syllogism, the Parents urge this Court to find that Axis, as a business entity, does not qualify as an individual; therefore, they argue, stacking is inapplicable and Mr. Adams should be afforded coverage under both policies.

In response, State Farm argues that the *Boullt* Court's use of the word "individual" was sheer happenstance and holds no special significance or definitional import for that case. State Farm posits that *Boullt* is distinguishable from the case *sub judice* because the *Boullt* Court was examining anti-stacking language in an uninsured motorist ("UM") statute, whereas, in the instant matter, the district court was interpreting policy language. Further, State Farm points out that the statute examined by the *Boullt* Court did not include the word "individual;" rather, it referenced "the insured." We find State Farm's reasoning to be more persuasive.

In *Rolston v. United Servs. Auto. Ass'n*, this Court highlighted the Louisiana Supreme Court's directive regarding the interpretation of language in an insurance contract. 06-0978 (La. App. 4 Cir. 12/13/06), 948 So.2d 1113. "Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning." *Id.* at p. 5, 948 So.2d at 1117

---

[13] *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454, 132 S.Ct. 1702, 1706, 182 L.Ed. 2d 720 (2012).

22

(quoting *Peterson v. Schimek*, 98-1712, p. 5 (La. 3/2/99), 729 So.2d 1024, 1028-29; *see also* La. C.C. art. 2047). "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." *Id.* "An insurance contract . . . should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge . . . its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* "That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Id.*

In the *case sub judice*, our review of the of the State Farm policies at issue reveals that the definitions contained in the State Farm Policy Booklet ("the Booklet") are clear and unequivocal. First, the Booklet provides that "***Person*** means a human being." Next, the Booklet explains that "***You*** or ***Your*** means the named insured or named insureds shown on the Declarations Page." It then becomes quite clear in the very next sentence that "you" is not necessarily a human being when it qualifies that "[i]f a named insured shown on the Declarations Page is a ***person***, then "***you***" or "***your***" includes the spouse of the first ***person*** shown as a named insured."

Thus, we conclude that "you" has a clearly defined and unambiguous meaning in the Booklet, and to construe "you" to mean "human being" would be an unreasonable and strained interpretation for which we have no authority. This is especially true in light of the fact that the Booklet defines "person" to mean "human being." This argument is without merit.

23

*Argument No. 2*

Here, the Parents re-urge this Court to consider that "you" should be defined as "individual" and that the Supreme Court requires that an individual be listed on multiple policies. As we just discussed, we find this approach to be a perversion of the explicit language found within the Booklet; therefore, this interpretation is not well founded. Alternatively, the Parents argue that "you" should be read to apply conjunctively to both of the named insureds on each individual policy. State Farm points out that, consistent with the Booklet definition, "you" or "your" is defined to encompass either "the named insured or named insureds," which is disjunctive. Nevertheless, following this rationale, the Parents assert that because both of the named insureds are not identical in State Farm Policies A and B, the anti-stacking statute does not apply. This argument is misplaced. It is clear from the record that the district court based its ruling solely on its interpretation of the policy language contained in the Other Liability Coverage provision, not on any statutory law.

*Argument No. 3*

This argument is markedly similar to the Parents' previous argument. This time, however, the Parents reference what is commonly known as the "anti-stacking" statute, La. R.S. 22:1295(1)(c).[14] Specifically, the Parents cite to the

---

[14] Louisiana Revised Statutes 22:1295(1)(c) provides:

> (c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subparagraph (1)(a) of this Section, then such limits of liability shall not be increased because of multiple motor vehicles covered under such policy of insurance, and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; however, with respect to other insurance available, the policy of insurance or endorsement shall provide the following with respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, and the following priorities of recovery under uninsured motorist coverage shall apply:

24

district court's reasons for judgment, wherein it found that "the two policies cannot be stacked," arguing that La. R.S. 22:1295 only applied to UM coverage, which is not at issue here. There are two flaws in this argument. First, we would note that the term "stacking" appears nowhere in the "anti-stacking" statute, it is simply a colloquial term of art meaning that coverages cannot be combined in certain delineated circumstances. We find the district court's use of the word was nothing more than shorthand to convey that, under State Farm's Other Liability Coverage provision, if "you" as a named insured are covered under more than one liability policy, then you may not recover on each of those policies for claims arising from the same accident. Second, while the Parents are correct that La. R.S. 22:1295 is limited to circumstances involving UM coverage, it is of no moment—State Farm did not use the statute as a basis for its arguments, and the district court did not utilize the statute in formulating its conclusions. This argument is without merit.

*Argument No. 4*

Finally, the Parents assert that in keeping with Louisiana jurisprudence, the anti-stacking statute only applies when a named insured under the policies is seeking to cumulate coverage. As a result, the Parents argue that they should not be precluded from asserting claims against both State Farm Policies A and B because they are not named insureds on either policy. This argument is equally problematic. The jurisprudence cited by the Parents relates to the interpretation of

---

(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary.

(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.

25

different iterations of the anti-stacking statute in the context of UM coverage.[15] However, as the Parents have previously admitted in a prior argument, UM coverage is not at issue here, rendering the statute inapplicable to the facts of this case. This argument is without merit.

*Mr. Adams' Argument*

Mr. Adams also takes issue with the district court's interpretation of the "*If Other Liability Coverage Applies*" provision. In his view, the district court's reasoning was erroneous when it recognized that Axis was a named insured in both policies, which precluded the policies from being stacked. Mr. Adams argues that he is the one seeking indemnification under both policies, not Axis. Because Axis is a legal entity separate and distinct from Mr. Adams, he maintains that the district court erred when it utilized the Other Liability Coverage provision to exclude coverage for him under State Farm Policy B.

State Farm posits that even if coverage was found to exist under both State Farm Policies A and B, it still would only be required to pay the limits of one policy.[16] This is because, according to State Farm, both policies contain identical Other Liability Coverage provisions. Further, State Farm counters that it is of no moment that Axis is a separate juridical entity because it qualifies as "you" under both policies, thereby triggering the exclusionary language of the Other Liability Coverage Provision. We agree with State Farm.

---

[15] Prior to 2003, the anti-stacking statute was found at La. R.S. 22:1406(D) when it was redesignated as La. R.S. 22:680 by Acts 2003, No. 456, § 3. The statute was then renumbered to its current location, 22:1295(1)(c), by Acts 2008, No. 415, § 1, eff. Jan. 1, 2009.

[16] Other Liability Coverage provision (1)(b) provides:

> The maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

For the detailed reasons we articulated in our review of the Parents' argument on this issue, we find that the plain language of State Farm Policies A and B define Axis as "you" under both policies. As a result, we find the district court did not err when it found that State Farm Policy B does not provide coverage to Mr. Adams for the collision giving rise to the instant litigation.

***Answer to Appeal***

The Parents filed an answer in this appeal to request that this Court increase the damages awards rendered by the jury verdict in the case *sub judice*. However, because we are remanding this matter to the district court to conduct an independent assessment as to those damages amounts, we dismiss this answer as moot.

**DECREE**

Based upon the foregoing discussion, we dismiss the appeal found in Case No. 2023-CA-0546; we affirm that portion of the district court's June 16, 2022 judgment that found Mr. Adams liable for wrongful death, survival and exemplary damages; we affirm that portion of the district court's June 16, 2022 judgment that dismissed with prejudice State Farm as a liability insurer under State Farm Policy Number 282-7788-D17-18B; we affirm the district court's exclusion of *Defendant's Requested Special Jury Charge No. 15*; we affirm the district court's April 28, 2023 denial of Mr. Adams' motion for new trial on the grounds that GEICO did not participate in the trial; we dismiss the answer to this appeal as moot; and we reverse the district court's April 28, 2023 denial of Mr. Adams' motion for JNOV and remand this matter to the district court for the purpose of conducting an independent assessment of the wrongful death, survival and punitive damages awards.

**AFFIRMED IN PART**
**REVERSED IN PART**
**REMANDED WITH INSTRUCTIONS**

28